THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* ARTHUR L. LEWIS, Respondent.

(Argued October 13, 1932; decided November 22, 1932.)

*Frank L. Wooster*, District Attorney (*Samuel H. Pearis* of counsel), for appellant. The constitutional guaranties respecting a defendant in a criminal case do not apply in a delinquency case. (*Matter of Naccarat*, 41 S. W. Rep. [2d] 176; *Matter of Broughton*, 192 Mich. 418; *State* v. *Dunn*, 53 Ore. 304; *State* v. *Zirbel*, 173 Wis. 498; *State ex rel. Berry* v. *Superior Court*, 139 Wash. 1; *Bryant* v. *Brown*, 151 Miss. 398; *Lamport* v. *Smedley*, 213 N. Y. 82.)

*Joseph E. North* for respondent. The infant defendant was not accorded a hearing nor was testimony taken, in violation of section 22 of the Children's Court Act. (*State* v. *Road Commission*, 131 S. E. Rep. 7; *State* v. *Rogers*,

31 N. M. 485; *People ex rel. Keech* v. *Thompson*, 94 N. Y. 451; *People* v. *Fitzgerald*, 244 N. Y. 307; *People ex rel. Peltz* v. *Brewster*, 232 App. Div. 1; *People* v. *Steinmetz*, 240 N. Y. 411; *People ex rel. Sabatino* v. *Jennings*, 248 N. Y. 258; *People ex rel. Deordio* v. *Palmer*, 230 App. Div. 397; *People ex rel. Van Ripper* v. *N. Y. City Protectory*, 106 N. Y. 609; *State* v. *Ray*, 63 N. H. 406.)

CROUCH, J. This is a juvenile delinquency proceeding under chapter 393 of the Laws of 1930, known as the Children's Court Act of the State of New York. Its proper title is not "The People of the State of New York against Arthur L. Lewis," as printed on the record and briefs. It was commenced and carried to judgment under the correct title of "In the Matter of Arthur Lewis, a child under the Age of Sixteen Years." (§ 10.) The distinction is not without significance.

Arthur Lewis, fifteen years old, in company with a younger boy, broke into a store in Binghamton and stole twelve dollars. Afterward the two boys, together with two other boys, made their way to Buffalo by means of three automobiles stolen in succession. Brought home, each boy, in separate proceedings, was charged in Children's Court with juvenile delinquency. In this particular case the charge was based upon the theft of the money. No fault is found with the proceedings had prior to the hearing. The hearings in the four cases were held in succession on the same day. Each boy was examined separately in his own proceeding in the presence of his parents, relatives and friends. When so examined the other boys were not in the room. The entire testimony thus taken was apparently deemed evidence in each case. The course of the hearing in this case, then, was as follows: The boy, in company with his mother, sister and the family clergyman, appeared and their appearances were noted. They were advised by the judge that they might have the aid of counsel if they so desired. The boy was then questioned by the judge.

The other boys were thereafter examined in the manner above stated. All the testimony thus given appears in the record by question and answer. Each boy told substantially the same story. The testimony sustains the charge beyond any doubt. Indeed, there was full admission and no attempt at denial. The judge then inquired if any one desired to speak on behalf of the boy. There was no answer. The boy was thereupon adjudged a delinquent child and was committed to the State Industrial and Agricultural School at Industry, N. Y.

Upon appeal to the Appellate Division, the judgment was reversed. The decision is placed upon the ground that the specific act upon which the delinquency charge is based would be a felony if committed by an adult and must be proved in substantially the same manner. The judgment, it is said, is supported by no evidence received in the boy's presence, and hence rests solely upon his own confession made without a warning against self-incrimination.

Even in a criminal trial the confession which requires corroboration to sustain conviction is only the extra-judicial confession, not the admission made in open court on the witness stand. (16 C. J. 735, § 1514.) If the hearing here had been a criminal trial, its sole defect would have been the failure to warn against self-incrimination. But it was not a criminal trial and there was no defect.

The decision of this court in *People* v. *Fitzgerald* (244 N. Y. 307) is cited by respondent as conclusive authority. That case arose under the provisions (since repealed) of chapter 385 of the Laws of 1925, relating to the Children's Court, so called, of Buffalo. As the opinion points out, that act was little, if any, different in substance and effect from section 486 of the Penal Law. Broadly speaking, it did little more than to set up a separate local court to administer existing law in cases

falling under that section. As the opinion also points out, a distinction existed under both statutes between children who fell within the neglect and delinquency provisions not involving acts of a criminal nature, and children who had committed specific acts which had always been and were still regarded as criminal. That distinction was a recognized if not an adjudicated one under section 291 of the Penal Code, which was the forerunner of section 486 of the Penal Law. In the one case, the proceeding was not regarded as criminal in its nature; rather, it was said to be benign and protective. In the other, though often resulting in a commitment to a reformatory instead of to a prison, the proceeding was one to punish for crime; the child was a " defendant " standing " in the attitude of a criminal duly convicted of crime." (*Matter of Knowack,* 158 N. Y. 482, 487.)

The Buffalo statute by its express terms established a Children's Court with " criminal jurisdiction." (§ 344-a.) The judge was vested with discretion to consider the child either as upon trial for the commission of a crime, or as one in need of the care and protection of the State. (§ 344-x.) If he took the latter view, he might suspend the trial, inquire into all the facts and surrounding circumstances and then, in lieu of proceeding with the trial, deal with the child in the manner provided in section 486 of the Penal Law in the case of a child without proper guardianship. If the trial proceeded, it might, upon " competent evidence," eventuate in a judgment of " conviction " whereby, among other things, a fine might be imposed. (§ 344-x.) A judgment upon conviction was appealable to the County Court as prescribed in title 3 of part 5, of the Code of Criminal Procedure, which is entitled " Of Proceedings in Courts of Special Sessions and Police Courts." The record in the *Fitzgerald* case shows that the proceeding was begun by the filing of a petition, also called an information, charging juvenile delinquency by the commission of burglary and

larceny. Upon the trial the " charge " was " burglary," not delinquency. The " plea " was " not guilty." Defendant was " informed of his constitutional rights." A judgment of " conviction " resulted, which was affirmed by the County Court and reversed by this court because the trial was a criminal trial in fact and in law, and the conviction rested not on competent evidence as required by the statute under which the proceeding was had, but on grossly incompetent evidence.

The proceeding here is under a widely different statute, which clearly and unmistakably abolishes the distinction referred to above between the two classes of children. The concept of crime and punishment disappears. To the child delinquent through the commission of an act criminal in its nature, the State extends the same aid, care and training which it had long given to the child who was merely incorrigible, neglected, abandoned, destitute or physically handicapped. All suggestion and taint of criminality was intended to be and has been done away with. The legislative intent is made as plain as language can make it. The statute (§ 45) says: " No adjudication under the provisions of this act shall operate as a disqualification of any child subsequently to hold public office or as a forfeiture of any right or privilege or to receive any license granted by public authority; and no child shall be denominated a criminal by reason of such adjudication, nor shall such adjudication be denominated a conviction. Neither the fact that a child has been before the Children's Court for hearing, nor any confession, admission or statement made by him to the court or to any officer thereof while he is under the age of sixteen years, shall ever be admissible as evidence against him or his interests in any other court."

" All provisions of the penal law or code of criminal procedure or other statutes inconsistent with or repugnant to any of the provisions of this act shall be considered inapplicable to the cases arising under this act."

The final mandate of the statute is that " This act shall be construed to the end that the care, custody and discipline of the children brought before the court shall approximate as nearly as possible that which they should receive from their parents, and that as far as practicable they shall be treated not as criminals but as children in need of aid, encouragement and guidance."

So much has been written, judicially and extra-judicially, about the sociological and legal aspects of juvenile delinquency, and about the public policy which underlies such statutes as the one in question, that a detailed discussion here would be trite. For the purposes of this case, the fundamental point is that the proceeding was not a criminal one. The State was not seeking to punish a malefactor. It was seeking to salvage a boy who was in danger of becoming one. In words which have been often quoted, " the problem for determination by the judge is not, Has this boy or girl committed a specific wrong, but What is he, how has he become what he is, and what had best be done in his interest and in the interest of the state to save him from a downward career." (23 Harvard Law Review, 104, 119, " The Juvenile Court," by Julian W. Mack.)

The evidence of his specific acts was relevant as an aid in answering those questions. Since the proceeding was not a criminal one, there was neither right to nor necessity for the procedural safeguards prescribed by constitution and statute in criminal cases. Many cases in many jurisdictions so hold. See, *inter alia: Commonwealth* v. *Fisher* (213 Penn. St. 48); *Cinque* v. *Boyd* (99 Conn. 70); *State* v. *Elbert* (115 Conn. 589); *Wissenburg* v. *Bradley* (209 Iowa, 813); *Mill* v. *Brown* (31 Utah, 473); *Matter of Daedler* (194 Cal. 320); *Matter of Januszewski* (196 Fed. Rep. 123); 1 Wharton Crim. Law [11th ed.], § 370, note 2.

Whatever the power of the Legislature may be in the case of adults (cf. *Lawton* v. *Steele*, 119 N. Y. 226,

233), there is no doubt about its power to say that an act done by a child shall not be a crime. " No act or omission is a crime except as prescribed by statute." (Penal Law, § 22; *People* v. *Knapp*, 206 N. Y. 373, 380.)

In the administration of Children's Courts there is evidence of a tendency to confuse the procedure usual in mere dependency cases with that necessary in delinquency cases involving an issue of fact. To serve the social purpose for which the Children's Court was created, provision is made in the statute for wide investigation before, during and after the hearing. But that investigation is clinical in its nature. Its results are not to be used as legal evidence where there is an issue of fact to be tried. When it is said that even in cases of law-breaking delinquency constitutional safeguards and the technical procedure of the criminal law may be disregarded, there is no implication that a purely socialized trial of a specific issue may properly or legally be had. The contrary is true. There must be a reasonably definite charge. The customary rules of evidence shown by long experience as essential to getting at the truth with reasonable certainty in civil trials must be adhered to. The finding of fact must rest on the preponderance of evidence adduced under those rules. Hearsay, opinion, gossip, bias, prejudice, trends of hostile neighborhood feeling, the hopes and fears of social workers, are all sources of error and have no more place in Children's Courts than in any other court. (*People* v. *Pikunas*, 260 N. Y. 72.) (Cf. U. S. Children's Bureau Publication No. 97 [1922], p. 55, " How Far Can Court Procedure Be Socialized Without Impairing Individual Rights," Judge Edward F. Waite; 13 Jour. Criminal Law and Criminology [1922], pp. 61, 64, " Socialization of Juvenile Court Procedure," Dr. Miriam Van Waters; " Juvenile Courts in the United States," H. H. Lou, p. 138.)

The rights of the child and of the parents are thus amply safeguarded, for the statute provides not only for

appeals (§ 43) but it also provides (§ 25) that in delinquency cases, such as this, the court on its own motion or upon application by any interested person may set aside or arrest judgment or grant a new hearing in the exercise of its powers of protection over the child, either before or after final adjudication or commitment. Moreover, though it is not now necessary so to hold, it may be that the Supreme Court has power, under its general chancery jurisdiction, to intervene in any given case. (*Matter of Knowack, supra.*)

The judgment of the Appellate Division should be reversed and that of the Children's Court affirmed.

CRANE, J. (dissenting). Do the Constitution of the United States and the Constitution of the State of New York apply to children or only to adults? By the Fifth Amendment to the Federal Constitution, applicable to Federal courts, no person shall be compelled in a criminal case to be a witness against himself, nor deprived of his liberty, without due process of law. The latter provision, by the Fourteenth Amendment, is made binding on all the States.

These provisions are also in the New York State Constitution. Article 1, section 6, says that no person shall be compelled in any criminal case to be a witness against himself nor deprived of his liberty without due process of law. Again, I ask the question, do these protections and safeguards, found necessary against arbitrary and abusive power, apply only to grown-ups, or do our children share the protection? May a child be incarcerated and deprived of his liberty in a public institution by calling that which is a crime by some other name; and if so, at what age may the Legislature take from him the constitutional right? Again, let me put this more concretely, that we may realize just what we are doing. A man charged with burglary or larceny cannot be compelled to be a witness against himself. He cannot be forced to testify and then be convicted on his

own statement. This law is as old as our Constitution. Can a child be deprived of his liberty, taken from his home and parents and incarcerated in an institution for a term of years, by changing the name of the offense from "burglary" or "larceny" to "juvenile delinquency?" If the Legislature can thus wipe out the constitutional protection by changing a name, the substance and reality remaining the same, at what age of an accused does this power begin and end? May the Legislature call forgery, larceny, burglary, assault, "moral delinquency," and send a person twenty years of age to Elmira Reformatory, or some other correctional institution, on his own confession, wrung from him by an inquisitorial process in court, compelling him to be a witness against himself? If this legislative power exists regarding a boy fifteen years of age, why is it not also possible to do the same thing to a young man twenty years of age? At what age do the constitutional safeguards and protection begin? The Constitution of this State and the Federal Constitution, in so far as it is applicable, cannot be nullified by a mere nomenclature, the evil or the thing itself remaining the same.

In this case, young Arthur L. Lewis, a boy fifteen years of age, was charged with violating section 486 of the Penal Law, by willfully, wrongfully and unlawfully forcibly breaking and entering a building, to wit, the Grand Union grocery store, situated at 126 Schubert street in the city of Binghamton, N. Y., and stealing and carrying away therefrom lawful money of the United States. Section 486 of the Penal Law provides that a child over seven, and under sixteen years of age, is a delinquent, who commits an act, which, if committed by an adult, would be a crime, not punishable by death or life imprisonment. *This is the only act of delinquency charged against young Lewis.* If he had been sixteen years of age, the act charged would have been a crime.

Under the provisions of the Constitution, above men-

tioned, he could not be forced to be a witness against himself, which means that the charge could not be proved by questioning him about it as a witness in court.

Other provisions of the Code of Criminal Procedure would also apply to him, such as the inability to convict him on his own confession, without corroboration and the right to be confronted with witnesses and to cross-examine them. We brush these aside for the present, and deal only with the constitutional provision, which the Legislature cannot undermine. Therefore, Lewis, if he were sixteen years of age, would be charged with a crime, and the crime would have to be proved in accordance with the restrictions and prohibitions of the Constitution; he could not be compelled to be a witness against himself, or convicted and sent away on such testimony. Lewis being under sixteen years of age, all these safeguards have been brushed aside; the Constitution means nothing. The acts committed are exactly the same for a boy over sixteen as for a boy under sixteen, but the Legislature has called the one a " crime " and the other " juvenile delinquency." Changing the name for the same series of acts, the Legislature permits and authorizes a judge to question the accused in his court or in his chambers on the charge made against him; can compel him to be a witness against himself, and on his sworn or unsworn statement unsupported by any other evidence, send him to an institution until he is twenty-one years of age. This court should be very slow in sustaining any such arbitrary power.

We fully realize that all these measures were adopted in behalf of the infant, and out of so-called charitable considerations for his welfare. The motives behind all our reform movements are probably commendable and beyond criticism. Some are ever on the lookout to improve civic conditions and the morals of the individual by the force of law, and yet, we must be careful that in these endeavors to correct others, we do not exceed

well-recognized principles of municipal government. Absolute power in the hands of a careful and just man may be a benefit, but most of our Constitutions have been adopted out of experience, with human nature as it is, and is apt to be in the future. We must minimize the chance of abuse and place limitations even upon those who have the best of purposes and the most benevolent dispositions. To send a young man to prison for a crime is a serious matter for him and his family. To take a young lad, filled with the wild dreams of childhood, from his parents and his home and incarcerate him in a public institution until he is twenty-one years of age, is equally as serious, and the consequences are not lessened by the emollient term, "juvenile delinquency."

The Children's Court Act of the State of New York (Laws of 1930, ch. 393) provides that a delinquent child is a person less than sixteen years of age who commits any act which, if committed by an adult, would be a crime, not punishable by death or life imprisonment. This is the part we are dealing with here in this case, but the act provides much more. It deals mainly with those children who are incorrigible, ungovernable, habitually disobedient and beyond the control of their parents, those who are habitually truant, and repeatedly desert their home, or who associate with unmoral and vicious persons, or who habitually use obscene or profane language or beg or solicit alms or money in public places. Juvenile delinquency is the commission by a child of any of the offenses enumerated in the foregoing, none of which are crimes if committed by adults or by anybody else. These charges are more or less informal, although records of the proceedings must be kept and sufficient evidence must be produced to prove the condition covered by the act. We are dealing here, however, with a charge of a crime, or that which would be a crime in an adult; it is a single act, not a continuing one. The doing of the deed constitutes the offense which this law calls "juvenile

delinquency," and which in a child a year older would be called " a crime." It is such acts and deeds, call them what you will, which lead to the consequences or punishment; permit incarceration in a protective institution. When the *only* charge is one of crime — called out of charity " juvenile delinquency "— it must be surrounded in prosecution by the safeguards and limitations of the Constitution. This fundamental document of our State government, if it protects a boy sixteen years of age, must also protect a boy fifteen years of age. Once remove the barriers and where will we stop? If we say sixteen years of age is the limit today, the next Legislature may say twenty. Wise it is for this court to follow the Constitution as it is written, for even under it the field remains wide open for all experiments in the upbringing and development of our citizenry.

The Children's Court Act refers to neglected children and abandoned and destitute children and those physically handicapped. Surely here the Children's Court, as established, performs a most human function in caring for these unfortunates. In dealing with this subject, even at the expense of repetition, we must be careful to note that we are here touching upon only one minor portion of this progressive legislation, and that is, the juvenile delinquency existing solely upon the charge of an offense which in an adult would be a crime. That recognized procedure is to be followed as far as the circumstances permit is evidenced by section 14 of the Children's Court Act, which reads: " Where the method of procedure in a case or proceeding in which the court has jurisdiction is not provided in this act, such procedure shall be the same as provided by law, or by rules formally adopted by the court within the scope of this act, but the court may hear and determine causes in which it has jurisdiction with or without a jury, in the discretion of the court. If there be a jury, the number of jurors shall be six and the jury shall be drawn and a trial had in the

same manner as obtains in the trial of criminal actions in the county court of said county, and the jury shall be in charge of the county officers the same as though said trial was in fact held in the county court."

Section 22 also provides that upon the return of a summons after a child has been taken into custody, the court shall proceed " to hear and determine the case * * * and inquire into the habits, surroundings, conditions and tendencies of the child." *The judge made no such inquiry.* What did the judge do in this case?

Arthur Lewis, a boy fifteen years of age, was, as already stated, charged with willfully, wrongfully and unlawfully breaking and entering a building and stealing money, that is, he was charged with acts which would constitute burglary and larceny if he had been one year older. The record shows that the boy appeared before the judge and was questioned by him. Whether he was sworn does not appear. The recital in the judgment of conviction says that the judge advised the boy and his mother that they might have the aid of counsel if they so desired. He at least must have had an idea that the proceedings were in the nature of a judicial inquiry. The questions put by the judge and the answers given by the boy have been written out and form the *sole* record of the proceeding. The boy confessed and the judge sent him to the State Industrial and Agricultural School at Industry, N. Y., to stay there until he was twenty-one years of age, unless sooner discharged. No other evidence was taken and no other proof given outside the confession. The accused having been forced to be a witness against himself, was sent away to be locked up on his own testimony. This was in direct violation of the Constitution of this State, and the Appellate Division was right in reversing the judgment.

We had this same question before us in *People* v. *Fitzgerald* (244 N. Y. 307, 313), and while it arose under the Children's Court Act of Buffalo (Laws of 1925, ch.

385), in essence there is no difference. This court was unanimous in saying: " Where, therefore, a child is arrested and charged with being a delinquent child because it has committed an offense which would be a crime in an adult, that offense must be proved, and proved by competent evidence. If our own good sense and judgment did not tell us this, the act itself creating the Children's Court of Buffalo would remind us of it. Section 344-x of the act notes the difference between a trial for an offense requiring competent proof before conviction and the other informal hearings whereby children may be provided with homes or proper guardianship. This section says:

" ' Upon the return of the summons * * * after any child has been taken into custody, and at the time set for the hearing, the court shall proceed to hear and determine the case. The court from time to time may adjourn the hearing and inquire into the habits, surroundings, conditions and tendencies of the child.' "

These are the identical words as now found in section 22 of the Children's Court Act of the State of New York (Laws of 1930, ch. 393).

Reference may again be made to the caution suggested by JUDGE ANDREWS in *People ex rel. Van Riper* v. *New York Catholic Protectory* (106 N. Y. 604, 609), in dealing with this summary jurisdiction for the disposition of children. It was quoted at length in the *Fitzgerald* case.

The judgment of the Appellate Division should be affirmed.

POUND, Ch. J., LEHMAN, O'BRIEN and HUBBS, JJ., concur with CROUCH, J.; CRANE, J., dissents in opinion in which KELLOGG, J., concurs.

Judgment accordingly.