In the Matter of " FRED ROBLES ".*

Domestic Relations Court of the City of New York, Children's Court, New York County, December 24, 1948.

---

* Name used herein is fictitious for the purposes of publication.

No appearance for defendant.

PANKEN, J. Subdivision 18 of article VI of the Constitution of the State of New York empowers the State Legislature to " establish children's courts, and courts of domestic relations, as separate courts, or as parts of existing courts or courts hereafter to be created, and may confer upon them such jurisdiction as may be necessary for the correction, protection, guardianship and disposition of delinquent, neglected or dependent minors, and for the punishment and correction of adults responsible for or contributing to such delinquency, neglect or dependency * * * ."

Pursuant to the provisions of the constitutional mandate, the State Legislature has created children's courts in the State of New York and by act created the Domestic Relations Court of the City of New York, conferring in some areas exclusive jurisdiction upon this court in its Children's Court Division and invested it with certain powers. Children's courts were created and functioned within the city of New York prior to the legislative act establishing the Domestic Relations Court of the City of New York. The purposes of the children's court and the Children's Court Division of the Domestic Relations Court of the City of New York was to create instrumentalities for the protection and rehabilitation of children. These courts were instituted in response to a realization by the community of its social duty and for the enlargement of the opportunities for our children; to make provision for their care; and to provide the means to protect children against themselves, against their parents, and even against the community; and where children by reason of the acts of their parents or those standing in *loco parentis,* whether they stand in *loco parentis* for a long or short period of time, become delinquent or neglected, or because of neglect become delinquent, to rehabilitate and salvage such children. The jurisdiction conferred upon this court empowers it to inquire into the causes of delinquency and the consequences of neglect of children; and where the neglect by parent of a child is apparent and culpable, or where a parent or a stranger contributes to the delinquency of a child, and it is established by competent proof, to punish for such acts according to law.

The advance of culture and the development of a finer civilization compelled man to recognize his responsibilities and imposed upon him obligations and duties to conform to communal life, contributing to the welfare of all. The law like culture and civilization is a living organism. It undergoes continuous change. As economic, social and political conditions imprint themselves upon the individual and his relationship to the community, and the community to the individual, to meet those conditions, the law of necessity must be changed. Man in the discharge of his obligations and duties to the community restricts himself so that his acts may not impinge upon the rights of his fellows. There can be no freedom without restraint. In the evolution of the law as it relates to those in the community who are incapable of thinking for themselves, of determining the difference between right and wrong, a different attitude is commanded than to those who are competent, able to think, and can distinguish between right and wrong. Children can think; indeed, they do, but their thinking is on an immature level. Often they do not realize that their acts are wrongful, and as often, they act in response to emotions or sentiments rather than to reason.

Up to a certain period the human being is immature both mentally, emotionally, socially, and in every other direction. Age is not the factor that is productive of maturity. Chronologically one may be presumed to be old enough to know, to understand, to be mature emotionally, mentally, and socially. However, he may remain emotionally, socially, and mentally immature. Chronological age alone does not determine maturity. Children certainly are immature. We have come to recognize that. And the law now recognizes that children cannot be charged with responsibility for their acts as adults are charged. Children respond to their emotions, and their emotions are influenced by the environment in which they are bred. Infiltrations from without are impacts upon the emotions and the life styles and life patterns of children to a very large degree. They are what it is possible for them to be. Under our law we no longer treat children as criminals. Indeed, the State has an interest in rehabilitating and so, conserving children for future citizenship, and hence, contributing to the common good. (See *People* v. *Lewis*, 260 N. Y. 171.) I am grateful, as we all should be, for the change in social attitudes toward our child life and the change which has been wrought in the law to meet the needs of our children.

Care of children requires understanding of them; moreover, sympathy and affection. The human being is most sensitive during childhood. He senses whether he is accepted or not. Rejec-

tion of a child is felt by him even though there is no overt manifestation of that.

The Legislature of the State of New York in 1948, amended the law conferring exclusive jurisdiction over children under the age of fifteen (cf. L. 1948, ch. 556; N. Y. City Dom. Rel. Ct. Act, § 2, subd. [15]), no matter what act of delinquency the children engaged in. Theretofore, this court had no jurisdiction in a case in which a child committed an act which if committed by an adult would be punishable by death or life imprisonment. The law has now been changed and in such cases the Children's Courts have exclusive jurisdiction.

It is right that the instrumentality to determine whether a child needs aid from the State and rehabilitation, and the form and technique to be employed, is lodged in this court. Under section 61 of the Domestic Relations Court Act exclusive jurisdiction in cases where children are involved has been conferred and limited to this court. Neither the police department nor any agency, government or private, is endowed with the same power, nor has any other instrumentality jurisdiction to make a determination as to whether or not a child had engaged in delinquent conduct, nor has any instrumentality outside of this court the power to determine whether a child had been neglected.

I am deeply concerned with the fact that government agencies other than this court have arrogated to themselves judicial powers and determine whether or not a child has been delinquent or neglected, and take it upon themselves to determine whether rehabilitation is necessary, and the type of rehabilitation to be accorded.

In this matter the child had engaged in delinquent conduct for a considerable period of time, at least since April of 1947. In several instances the delinquency was of a very serious nature. The boy has on occasion exacted by force and threat money from younger children. This child is not bad. He has acquired the characteristics of other children in the community. On the occasions when he had exacted money from other children by threat or force, members of the police department took him into custody, brought him to the police station, and thereupon took to themselves the authority and power to determine whether the child has committed an act of delinquency, whether he needs rehabilitation, and the type of rehabilitation which should be accorded; indeed, turned the child back into the community without any aid from the State, which was so badly needed by the boy.

The juvenile aid bureau of the police department is in a position to be of great service to the children of the city of New York.

If the purpose for which the juvenile aid bureau has been established is to be served, it should be divorced from the police department and made an arm of the Children's Court of the City of New York.

The father, who appeared with the boy, told me that the child had developed a pattern of life, a life style indicative of deep-seated delinquency. No doubt the boy had become deeply conditioned in antisocial attitudes. Those attitudes are not immoral. They have become amoral. They have become part and parcel of the boy's makeup, emotional and mental.

The child is reluctantly found to be delinquent. It must, however, be noted that the delinquencies in which this youngster had engaged were due to neglect of him. It is not within my province to dismiss a petition when a series of delinquencies had been proven and the child admitted these delinquencies and others because I find also as a fact that the child never had a chance to be other than he is, and that he is what he is because of neglect to which he was exposed. I must find as a matter of fact that the repetition of his acts without being accorded treatment in line with the modern and scientific techniques has deepened his delinquency pattern. There are eleven children in this family. The father and mother live apart and the family lives in a neighborhood which is pregnant with delinquency patterns of life.

Some well-meaning people believe that it is harmful for a child to be taken to court. They are mistaken. In some instances it is visiting harm and hurt upon a child to evade his appearance in court. No child is punished by the Justices of the Children's Court of our State. Each of the Justices discharges his duty, and the duty which is imposed upon him is to help the child rather than punish him, rehabilitate him, readjust him so that he might fit into community life. A failure to bring a child into court so that he might obtain the aid that the court is in a position to accord may really be punishment, for under such circumstances the child becomes conditioned to a delinquency pattern, and so he is not helped to realize that there are morals, that there is law, that to enjoy what society affords he must in turn contribute in decency to society.

Self-respect is the basis upon which good living rests. Without self-respect there is no respect for others, there is no self-reliance, and there is no dignity. Children who do develop delinquency patterns of life are benefited by their appearance in court, receiving from the court and from the community the ministrations which help to readjust them.