**In re John Lawrence POFF.**
**No. 29–55.**

United States District Court
District of Columbia.

Oct. 20, 1955.

James J. Laughlin, Washington, D. C., for petitioner.

Leo A. Rover, U. S. Atty., Washington, D. C., for the District of Columbia.

Kitty Frank, Asst. U. S. Atty., Washington, D. C., for the Government.

CURRAN, District Judge.

Four petitions were filed in the Juvenile Court of the District of Columbia representing that John Lawrence Poff, aged sixteen, was within the jurisdiction of the Juvenile Court. One petition, number 15–535–J, filed March 28, 1953, alleged that Poff, on January 30, 1953, used an automobile without the permission of the owner. A second petition, number 15–540–J, filed March 20, 1953, alleged that between February 8, 1953 and February 9, 1953 Poff used an automobile without the permission of the owner. A third petition, number 15–545–J, filed March 23, 1953, alleged that on December 10, 1952, Poff took, without right, property belonging to three separate persons. A fourth petition, number 15–558–J, filed March 24, 1953, alleged that between February 8, 1953 and February 9, 1953, Poff used an automobile without the permission of the owner.

The records of the Juvenile Court disclose, as to the first three above described

petitions, that Poff appeared with his mother in the Juvenile Court on April 3, 1953 and acknowledged the allegations of the three petitions. As to the fourth petition, the record discloses that Poff appeared with his mother and after a hearing in the Juvenile Court, was found to be involved. The record further discloses that as to all four petitions filed, disposition was made on April 10, 1953 when, in all four instances, Poff was found and adjudged to have violated a law and, being under the age of eighteen, he was ordered, in number 15–535–J, to be committed to the National Training School for Boys of the District of Columbia until he was twenty-one years of age. The same commitment was ordered in number 15–540–J, number 15–545–J and number 15–558–J, said commitments to run concurrently with the commitment in number 15–535–J. The specific violation alleged in number 15–535–J, was the unauthorized use of a motor vehicle. Poff was confined in Natural Bridge Camp, Virginia until November 3, 1954, at which time he was released on parole. In March 1955 petitioner was arrested in the District of Columbia for petit larceny, which charge was dismissed by the United States Attorney, and the petitioner was taken before the United States Parole Board, charged with a violation of his parole.

Petitioner now comes before this Court for a writ of habeas corpus praying that the sentence imposed by the Juvenile Court was unconstitutional inasmuch as he was not advised of his right to counsel, a right guaranteed him under the Sixth Amendment.

The Government urges upon this Court that the constitutional guarantee of the right to the assistance of counsel in all criminal prosecutions is not applicable to proceedings before the Juvenile Court to determine the delinquency of a child, and relies upon the decision reached in the case of Shioutakon v. District of Columbia, 114 A.2d 896, 898, decided June 24, 1955 in the Municipal Court of Appeals for the District of Columbia. The distinguished and learned Judge of that Court, writing for the Court, states:

" * * * The purpose of the proceedings is not to determine the question of guilt or innocence, but to promote the welfare of the child and the best interests of the state by the strengthening of family ties where possible, and, when necessary, to remove the child from custody of his parents for his welfare or the safety or protection of the public * * *." Citing Thomas v. United States, 74 App.D.C. 167, 121 F.2d 905, 908.

The Thomas case is authority for the principle that the procedure in the Juvenile Court in making the adjudication is non-criminal in character and such adjudication "is in no sense the counterpart of a conviction in a criminal court". But I cannot overlook the ultimate function of the Juvenile Court to determine the guilt or innocence of the individual in order to make an adjudication of whether he is a delinquent.

█ The original Juvenile Court Act enacted in the District of Columbia in 1906, March 19, 1906, 34 Stat. 73, Ch. 960, § 1, D.C.Code 1951, § 11–901 et seq., was devised to afford the juvenile protections in addition to those he already possessed under the Federal Constitution. Before this legislative enactment, the juvenile was subject to the same punishment for an offense as an adult. It follows logically that in the absence of such legislation, the juvenile would be entitled to the same constitutional guarantees and safeguards as an adult. If this be true then the only possible reason for the Juvenile Court Act was to afford the juvenile safeguards *in addition to those* he already possessed. The legislative intent was to enlarge, *not to diminish* these protections.

█ The humanitarian tendency of modern legislation towards infants is best evidenced by the statutory enactments providing that certain acts committed by certain infants, which in cases of adults would be crimes, shall be considered as

constituting juvenile delinquency only. 43 C.J.S., Infants, § 98, p. 232. The validity of such legislation has been repeatedly upheld, except as it conflicts with constitutional limitations. State ex rel. Cave v. Tincher, 258 Mo. 1, 166 S.W. 1028, Ann.Cas.1915D, 696. Juvenile statutes should be construed liberally in favor of the welfare of the child. In re Powell, 6 Okl.Cr. 495, 120 P. 1022; McClain v. Chelan County Super.Ct. 112 Wash. 260, 191 P. 852.

"In order that the beneficent purpose of the act may be effectuated, it should be construed liberally, except in-so-far as it purports to restrain the liberty of the child, in which case it should be strictly construed." Phillips v. State, Tex.Cr. App., 20 S.W.2d 790, 791. See also In re Lundy, 82 Wash. 148, 143 P. 885.

██ The question boils down simply to whether the legislature could deprive, had it so intended, a youth of these constitutional rights. This Court believes it could not, for in so doing it would be contrary to all principles that only by amendment may the Congress depart from the Federal Constitution. If this deprivation were extended to cover certain crimes committed by adults, it would be condemned by the Courts. Yet by some sort of rationalization, under the guise of protective measures, we have reached a point where rights once held by a juvenile are no longer his. Have we now progressed to a point where a child may be incarcerated and deprived of his liberty during his minority by calling that which is a crime by some other name? If so, at what age is the Congress limited to legislate on behalf of the juvenile? May a child be deprived of his liberty and incarcerated in an institution until he reaches the age of twenty-one years merely by changing the name of the offense from unauthorized use of a motor vehicle to juvenile delinquency? In other words, has the Congress wiped out the constitutional protection by changing a name, the substance remaining the same? This Court stands steadfast in the belief that the Federal Constitution, insofar as it is applicable "cannot be nullified by a mere nomenclature, the evil or the thing itself remaining the same." See dissenting opinion of Judge Crane in People v. Lewis, 260 N.Y. 171, 183 N.E. 353, 356, 86 A.L.R. 1001, which contains reasoning closely analogous to that of Dendy v. Wilson, 1944, 142 Tex. 460, 179 S.W.2d 269, 151 A.L.R. 1217.

The Government states that the rights guaranteed by the Sixth Amendment to persons accused of crime are not available to petitioner because he was not charged with a crime and the proceedings before the Juvenile Court resulting in his commitment to the Department of Public Welfare was not a criminal prosecution.

In Dendy v. Wilson, supra, the Texas Supreme Court held that minor children against whom proceedings were pending in the Juvenile Court could not be compelled over their objections to give testimony which might incriminate them under the protective provisions respecting self-incrimination in the Federal and State Constitutions, and the provision of the statute creating the Juvenile Court that evidence given in that Court should be inadmissible in another proceeding did not afford sufficient immunity to void the constitutional prohibitions. In California, Section 736 of the Welfare and Institutions Code, provides that "An order adjudging a person to be a ward of the juvenile court shall not be deemed to be a conviction of crime." In the case of In re Contreras, 109 Cal.App.2d 787, 241 P.2d 631, 633, the District Court of Appeals, Second District, Division 1, State of California, said:

"While the juvenile court law provides that adjudication of a minor to be a ward of the court shall not be deemed to be a conviction of crime, nevertheless, for all practical purposes, this is a legal fiction, presenting a challenge to credulity and doing violence to reason."

The Court further went on to say:

"True, the design of the Juvenile Court Act is intended to be salutary, and every effort should be made to further its legitimate purpose, but

never should it be made an instrument for the denial to a minor of a constitutional right or of a guarantee afforded by law to an adult."

The Court further stated that the motion to vacate and set aside the order committing the minor to the Youth Authority of California "should have been granted thereby enabling said minor, *with the aid of counsel*, to properly prepare and present a defense to the charges preferred against him."

The opinion of the learned Judge in the Shioutakon case, supra, is interesting and not without authority, but not convincing. There is no unanimity of opinion among the various courts as to whether or not constitutional guarantees are applicable to juvenile offenders. The position is best stated in an annotation at 151 A.L.R. 1229:

> "Such suggestions as may be gathered from cases discussing the general question of constitutional guaranties as applicable to juvenile offenders * * * in juvenile court proceedings, indicate unsettled and conflicting views",

and further the opinions of some courts

> "respecting the constitutional issues presented, or which may, upon proper presentment, become directly involved, illustrates the existence of a sharp divergence of views as to the applicability of constitutional limitations to juvenile courts."

I recognize that the Juvenile Court was created for the disposition of delinquent children and is not a criminal court. I also recognize that a hearing in the Juvenile Court is an adjudication upon the status of a child in the nature of a guardianship imposed by the State as *parens patriae* to provide the care and guidance that, under normal circumstances, would be furnished by the natural parents. I hold only that where the child commits an act, which act if committed by an adult would constitute a crime, then due process in the Juvenile Court requires that the child be advised that he is entitled to the effective assistance of counsel, and this is so even though the Juvenile Court in making dispositions of delinquent children is not a criminal court.

In other words, in the District of Columbia, where the charge in the Juvenile Court is one of crime which, because of charitable considerations for the welfare of the child, is called "juvenile delinquency", then it must be surrounded by the guarantees and limitations of the Federal Constitution.

It is interesting to note that the distinguished Chief Judge of the Municipal Court of Appeals for the District of Columbia, in a most recent case, Gaddis v. Hongell, 117 A.2d 230, 231, said

> "As is well known and understood, the procedures established for the small claims court were designed to make the services and protection of that court available to every litigant, plaintiff or defendant, without a lawyer. But as ought to be equally well understood, it was never intended that lawyers be barred from that court or that there be any interference with their traditional functions when they appear there."

This certainly is true and the same principle is applicable here. The Congress, in enacting the Juvenile Court Act, which designated that certain crimes when committed by a child to be juvenile delinquency, never intended that the child be barred from the protection of the Federal Constitution, but rather intended, out of charitable considerations for the child's welfare, that an additional protection be granted to the child by forbidding the stigma of the word "crime" to be attached to a person under the age of eighteen years.

One more matter deserves comment. It is not disputed, aside from the constitutional considerations, that petitioner would have been entitled to a jury trial. This being so, who is to make the decision as to whether or not a jury trial should be demanded? Is a sixteen year old boy capable of deciding whether he should be tried by a jury or tried by a Judge? I do not think so.

**228**

Chief Judge Edgerton of the United States Court of Appeals for the District of Columbia Circuit said in Williams v. Huff, 79 U.S.App.D.C. 31, 142 F.2d 91, 92:

"It seems to me to follow as a matter of law that a boy of seventeen cannot competently waive his right to counsel in a criminal case."

Courts should not brush aside lightly the guarantees of the Federal Constitution on some highly technical theory, and until the United States Court of Appeals for the District of Columbia Circuit has directed that the rights guaranteed by the Sixth Amendment are not available to the petitioner, I must grant the relief sought. The petitioner shall be released and counsel shall prepare an appropriate order not inconsistent with this memorandum.