## (March 9, 1961)

■ In the Matter of GAMBLE BENEDICT, Appellant. KATHARINE G. BENEDICT, Respondent; ANDRE PORUMBEANU, Appellant.

APPEAL from an order of the Girls' Term of the City Magistrates' Court of the City of New York, entered July 5, 1960, which denied a motion by appellants for an order (1) to terminate and dismiss this proceeding and (2) to vacate the warrants of arrest issued against them.

MEMORANDUM BY THE COURT. On the court's own motion, the appeal is dismissed, without costs. In the Girls' Term of the City Magistrates' Court, an appeal lies only from a final order (Girls' Term Court Act, § 25; L. 1951, ch. 716). The order here is not final and is therefore not appealable (cf. *Matter of Smith*, 7 A D 2d 927; *Matter of Herko*, 280 App. Div. 994; *Giuliano* v. *Giuliano*, 278 App. Div. 850).

PETTE, J. (dissenting). In my opinion, within the purview of the Girls' Term Court Act (L. 1951, ch. 716, § 25), the order appealed from must be deemed to be a final order and appealable.

To properly understand the nature of the order presented for review, it is necessary to set forth briefly the prior actions taken in this proceeding.

On January 27, 1960, Katharine G. Benedict, the grandmother of Gamble Benedict, a girl then 19 years of age, presented a petition to the Girls' Term Court, alleging, in accordance with the act (Girls' Term Court Act, § 5, subd. j), that the girl's conduct has been such as to injure her health, morals and welfare by reason of the fact that she "has left the country, has been associating with a married man, father of one child, one Andre Porumbeanu, and has been getting beyond control of the petitioner," the grandmother.

In response to the petition, the girl and Andre appeared in the Girls' Term Court before the City Magistrate presiding, who held a hearing.

On February 26, 1960, the Magistrate made his first "order of disposition." This order recites that he is satisfied "by the preponderance of competent evidence that the girl" comes within the provisions of the act; "that the allegations of the petition are proved, *that judgment should be rendered* and an Order of Disposition should be entered;" and that "*it is Ordered and Adjudged that*" the girl be "paroled to petitioner", that the investigation be continued and that the girl be subjected to an "MH" [mental health] and medical examination (emphasis added).

On February 29, 1960, the Magistrate made his second "order of disposition." This order recites that he is satisfied "by the preponderance of the competent evidence that the girl" comes within the provisions of the act; "that the allegations of the petition are proved, that *judgment should be rendered* and an order of disposition should be entered affecting Andre Porumbeanu," and it is "*Ordered and Adjudged by the court*" that he, Andre, "shall not associate with, write to, telephone, contact in any manner, Gamble Benedict, directly or indirectly, in person or otherwise" (emphasis added).

Thereafter, on April 5, 1960, the Magistrate issued a warrant for the girl's arrest because she had absconded from home, and thereby violated the conditions of the court's prior order paroling her in petitioner's custody. The following day, the Magistrate issued a warrant for Andre's arrest because the girl was in his custody and control, and thereby he violated the court's prior order prohibiting him from associating with the girl.

On June 30, 1960, the girl and Andre, on their joint petition, made a motion to terminate and dismiss the proceeding and to vacate the warrants of arrest on the grounds that they had been married on April 6, 1960; that she is now emancipated; and that they are both happily married and reside in Montclair, New Jersey.

The Magistrate held a hearing on the motion. In the course of the hearing he made it clear that he deemed the motion to be one for reconsideration of his prior orders of disposition, but that in the absence of the parties (who abstained from appearing in person and appeared by counsel) he was constrained to affirm his prior dispositions and to deny the motion without prejudice to any subsequent application. Accordingly, on July 5, 1960, he entered an "order of disposition" which, in effect, granted reconsideration but denied the motion and affirmed the prior orders of disposition. That was the net result of his actions, whatever the reasons which prompted them.

The girl and Andre now appeal from said order of disposition made on July 5, 1960.

Incidentally, while that order also denies a motion to disqualify the Magistrate, appellants' formal written motion papers disclose that the motion primarily was, as stated, to terminate and dismiss the proceeding and to vacate the warrants. In judging the appealability of the order, therefore, the portion as to the disqualification of the Magistrate may be disregarded.

With respect to appealability, section 25 of the Girls' Term Court Act prescribes: (a) that an appeal may be taken to the Appellate Division from "any

final order" of the Girls' Term of the City Magistrates' Court; and (b) that appeals under said act shall be governed by the provisions of articles 37 and 39 of the Civil Practice Act "insofar as such provisions may be practically applied thereto."

On the basis of the language used in section 25, the majority of this court have held that the order appealed from is not final, and hence, it is not appealable. I have reached a contrary conclusion based on the spirit and purpose of the act and on a reading of section 25 in the context of all the other provisions of the act.

The act is unique in its conception, its purpose and its scope. It was inspired by the inadequacy of the existing laws and courts. Its avowed purpose is to remove from criminal prosecution wayward minor girls between the ages of 16 and 21, and to subject them, as well as those who cause, aid or encourage their delinquency or immorality, to a summary compulsory proceeding *of a civil nature* before a City Magistrate, with a view to the girl's reformation and rehabilitation (Girls' Term Court Act, §§ 1, 5, 6, 22).

Before a petition may be filed to initiate the proceeding, it must first be authorized by the court after it has conducted a preliminary investigation (§§ 7, 8). Upon such authorization and upon the filing of the petition, the proceeding is begun by the service of a summons or warrant of arrest upon the wayward minor or upon her custodian, husband or other person, or upon both (§§ 8, 10). On the return of the summons or warrant a hearing is held by the Magistrate, and it may be conducted "in an informal manner" (§ 16). After the hearing, if the court "is satisfied by the preponderance of competent evidence, that the girl is within the provisions" of the act; "that the allegations of the petition are proved;" and that "*judgment should be rendered*, the court may enter an 'order of disposition' which shall be appropriate for the welfare of the girl in view of the facts ascertained and proved" (§ 17).

To effectuate and to implement the objectives of the act, the *order of disposition* may: (1) temporarily remand the girl to an official shelter; (2) parole her or place her on probation in the custody of a suitable person; (3) make, and enforce as to her and her custodian, rules "designed for the physical, mental or moral well-being and behavior of the girl"; (4) commit her to the custody of an authorized association, agency or institution for a period up to three years; (5) direct that she be furnished with necessary support, medical, surgical, psychiatric or other care; (6) subject her to a physical, psychological or psychiatric examination by a private physician or remand her for such examination to the Department of Hospitals of the City of New York; and (7) direct any person in whose custody she may be or in whose custody she may have been "to refrain from continuing the conduct or neglect" which is endangering her morals (§ 17, subds. [a]–[g]; § 21).

The court is also specifically empowered to issue such other order of disposition "as shall be deemed necessary for the welfare of the girl" (§ 17, subd. h).

For the entire period that the girl remains under its jurisdiction, the court is empowered from time to time: (a) to amend or supplement "Any order of disposition" as "to the court seems necessary and proper", and such amended or supplemental order is referred to as a "'supplemental order of disposition'" (§ 18); and (b) upon the petition of any aggrieved person for a rehearing, the Magistrate who made the order of disposition may, upon the rehearing, "affirm, modify or set aside any order [of disposition] reviewed" (§ 19).

The act further provides that "If, at any stage of the proceedings, the court shall determine that it no longer has jurisdiction, that conditions detrimental to the welfare of the girl have been corrected, or that she has adjusted satis-

factorily so that no further court action is deemed necessary, and it is in her interest that the petition be dismissed, the court is empowered to do so " (§ 17).

Nowhere in the body of the act is any mention even made of the conventional intermediate or final order, decree or judgment. Indeed, the act meticulously and conspicuously avoids any such reference. Such deliberate omission is quite understandable. For the clear intent of the act is to disassociate the rehabilitation proceeding thereunder from the conventional special proceeding or the conventional action, as well as from the proceedings under the Domestic Relations Court Act of the City of New York (which embraces both the Children's Court and the Family Court), and to inaugurate a new series of informal procedures. Such procedures are designed to treat the girl, not as a lawbreaker, but as a delinquent problem child in imminent danger of moral perversion. The treatment prescribed is essentially custodial, medical, surgical, psychological and psychiatric; and it includes both preventive negative measures and positive affirmative actions.

The purpose of prescribing such a variety of remedies and of vesting the court with such plenary summary powers is to enable the court to administer every kind of treatment to the girl, with a view to her complete moral, mental and physical regeneration (cf. *People* v. *Lewis,* 260 N..Y. 171, 176–178). In order to give the court the broadest latitude in dealing with the fluctuating conditions and abnormal problems presented, the remedies are expressly designed to be flexible and changeable. For the same reason the parties remain under the court's supervision until the girl's rehabilitation has been accomplished, or until the cause which subjected her to the court's jurisdiction has been removed and the petition against her dismissed, or until she has completed her term of commitment and is thereafter discharged from parole (§§ 5, 17).

In effect, what the Girls' Term Court Act has done is to substitute for the conventional court a sociological agency with enforcement powers — an agency administered by the court with necessary safeguards for the protection of the parties' constitutional rights. Under such circumstances there can obviously be no finality to any of the court's actions and there can be no final order or judgment in the conventional sense. For the objective is, not to impose any punishment or to make any award or to make any finding or adjudication, but primarily to effect a cure or rehabilitation of the wayward girl and the eventual dissolution or termination of the entire proceeding. That conclusion is emphasized by the provision in the act that no determination thereunder shall be deemed to be " a conviction or adjudication of any criminal offense or status " (§ 22).

As indicated, the provisions of section 25 of the act granting the right of appeal from a " final order ", should be construed in the light of the entire act and of the fundamental innovation which it made with respect to every proceeding thereunder. So construed, the reference to " final order " in section 25 must be deemed to relate to every " order of disposition " which the court is authorized to make (provided only that such order be unconditional). For implicit and instinct in the act is the intent that every unconditional order of disposition, to the extent of its reach, shall be a final order. The underlying purpose of every such order is to bring the proceeding to an end as quickly as possible by removing the evil influences surrounding the girl and inspiring her reformation. Plainly, successive orders are required and are made only when and if the prior orders fail of that purpose. But inherent in every order is, not only the hope, but the potential force to finally terminate the proceeding. The act is expressly designed to operate just that way, i.e., in successive stages.

It must follow, therefore, that every unconditional order of disposition is the culmination of a separate step or independent proceeding in the total rehabilita-

tive process of the girl; and that, within its limited field of operation, each such order is necessarily final.

What is equally persuasive, however, to establish the finality of every order of disposition, is that the act itself fails to provide for any other kind of order — either intermediate or final.

That the order here appealed from, which was treated by the Magistrate as one made upon a rehearing, is in fact an "order of disposition" under section 17 of the act, there can be no doubt. It must be so characterized: (1) by virtue of the first paragraph of section 17, which authorizes the court "at any stage of the proceedings", to dismiss the petition if the court shall "determine that it no longer has jurisdiction, that conditions detrimental to the welfare of the girl have been corrected, or that she has adjusted satisfactorily so that no further action is deemed necessary, and it is in her interest that the petition be dismissed"; (2) by virtue of subdivision (h) of section 17, which authorizes the court to make such other order of disposition "as shall be deemed necessary for the welfare of the girl"; and (3) by virtue of section 19, which, upon a rehearing before the Magistrate who made the original order of disposition, authorizes him to "affirm, modify or set aside" such order.

It is also significant that, as shown by the record here, this order was treated and entered in the Girls' Court as an "order of disposition."

Of course, the claim may well be made that the order under review is, by the very terms of the act, subject to future vacatur or modification. That fact, however, cannot impair its finality or affect its appealability. If, as here, the act authorized the making of an "order of disposition" only, and none other, such order must be deemed to be final; and its finality is not affected: (1) because the act also permits a future amendment of the order, or (2) because it is intended to serve a temporary purpose or is labeled "temporary" (cf. *Aberlin* v. *Aberlin*, 3 A D 2d 417, 419).

The cases cited by the majority, and other cases of like import (*Matter of McDonough* v. *Plotnick*, 8 A D 2d 844; *Matter of Sullivan* v. *Sullivan*, 4 A D 2d 785), cannot be deemed controlling here. All of them construe section 58 of the Domestic Relations Court Act of the City of New York. True, that section limits appeals to "final orders" and "final judgments", and it contains other provisions analogous to the provisions found in section 25 of the Girls' Term Court Act. But in determining the meaning of the words "final order" and the extent of the right of appeal granted by the respective sections, each section must be read in context and must be judged in the light of the statute of which it is part.

The Domestic Relations Court Act expressly authorizes and provides for the making by its Children's Court division and its Family Court division, of a variety of both intermediate and final orders and judgments (cf. N. Y. City Dom. Rel. Ct. Act, §§ 83, 92, 102, 129). The extensive jurisdiction lodged in the Children's Court and in the Family Court makes it necessary for those courts to render orders and judgments of every character — some final and some intermediate — to meet the exigencies presented to them with respect to the whole ambit of domestic relations, involving the parents, the children, and the liability of each for the support of the other. Therefore, the term "final order" or "final judgment" as used in section 58 may well be deemed to signify the ordinary final order or judgment.

The Girls' Term Court Act, however, while in some respects similar, is basically different in scope, in purpose and language. It invests the Girls' Term Court with a jurisdiction which is highly specialized and which is strictly confined to the *treatment* of errant girls between the ages of 16 and 21. As indicated, it

makes no mention whatever of the conventional order or judgment — either intermediate or final. It evolves new approaches and new procedures in the care and treatment of such girls only. As to them, its avowed purpose is to break away from the old anachronistic forms and traditions. For that reason it authorizes only "orders of disposition", it makes no provision for any other order or judgment; and every direction of the court is required to be made by an "order of disposition" (§ 17).

Such requirement is most logical when it is realized that in view of the limited jurisdiction of the Girls' Court, until the proceeding has been terminated or dismissed, there never can be finality to its actions in the conventional sense. By its very nature, the Girls' Term Court Act precludes the making of any order which has such finality. Nevertheless, every unconditional order of disposition, whether it directs parole, probation, remand, commitment or psychiatric examination, operates as an immediate deprivation of a most precious right — the right of freedom. As to such right the order of disposition ends it with finality in a most realistic sense.

Since the Girls' Term Court Act represents a departure from the traditional procedures, and since the act creates and utilizes the "order of disposition" in order to give effect to all the court's determinations, the final order referred to in section 25 must be deemed to relate to such orders of disposition.

Surely, the Legislature, by granting a right of appeal, intended to grant an effective enforcible right. But, unless such orders of disposition be deemed to be final this right becomes wholly ineffective and illusory. Since the act makes no provision for any other final order or judgment, no aggrieved girl would have the right to review any order whatever even though it may have unlawfully deprived her of her liberty and freedom of action and even though it may have subjected her, against her will, to every sort of ignominious physical, surgical and mental examination.

It is fundamental that no legislative act will be construed to permit such a harsh result if the act be equally susceptible of a different interpretation — especially one which is in keeping with its spirit.

If we bear in mind the beneficent purposes of the Girls' Term Court Act and all its provisions, then the fair and logical construction of section 25 is that it grants a right of appeal from every unconditional order of disposition.

The order here is such an order of disposition. Hence, it is appealable as a "final order" and the appeal should be determined on the merits.

There is an additional reason for entertaining this appeal. It will be recalled that section 25 of the Girls' Term Court Act renders the provisions of articles 37 and 39 of the Civil Practice Act applicable, "insofar as such provisions may be practically applied", to appeals from orders made in the Girls' Term Court. Under article 39, the order here would be appealable. The first portion of the order which denies the motion to terminate the proceeding is akin to an order in a civil action denying a motion to dismiss the complaint. Such an order is appealable as of right since it "involves some part of the merits" and since it "affects a substantial right" (Civ. Prac. Act, art. 39, § 609, subds. 3, 4). The second portion of the order under review, which denies the motion to vacate the orders of arrest, is comparable to the order which denies an application to vacate an order of arrest in a civil action (Civ. Prac. Act, §§ 814, 844). An appeal is expressly authorized "Where the order grants, refuses, continues or modifies a provisional remedy" (Civ. Prac. Act, art. 39, § 609, subd. 1).

Nolan, P. J., Ughetta, Kleinfeld and Christ, JJ., concur; Pette, J., dissents from the dismissal of the appeal, and votes to have the appeal determined on the merits, in opinion.