In the Matter of JOHN DOE*, a Person Alleged to be a Juvenile Delinquent, Respondent.

Family Court, Kings County, November 21, 1966.

---

* The names used herein are fictitious so that actual parties are protected.

*J. Lee Rankin, Corporation Counsel (Richard Borda of counsel), for petitioner. Charles Schnitsky for respondent.*

Guy J. Mangano, J. Respondent herein is a 14-year-old boy charged with being a juvenile delinquent, in that, while acting in concert with others, he committed acts which, if committed by an adult, would constitute the crimes of homicide and assault.

The respondent moved for a dismissal on the ground that petitioner failed to establish a case by a fair preponderance of evidence as required by the Family Court Act.

Petitioner, detective, presented testimony by 4 witnesses, namely: (1) petitioner, (2) wife of deceased, (3) deceased's daughter and (4) one John Jones.*

Petitioner testified in substance that respondent had co-operated with police in the investigation of the death of one Edward Smith.* He advised respondent that " if it were found that he took part in homicide, he would be arrested with other boys "; that if he was arrested he could remain silent until he consulted an attorney; that respondent gave him an account of what happened but stated he was not involved.

Deceased's wife's testimony was vague and contradictory in several important particulars; she gave varying versions as to her whereabouts at the time of the occurrence; she gave varying versions as to her observations during the crucial moments of the altercation. These variances in her testimony were so substantial as to render her testimony of no probative value to the court.

Deceased's daughter testified to substantially the same effect. However, her testimony must be excluded as hearsay, because under questioning by court, she testified that she did not observe the events but only repeated what she was told by others.

John Jones*, an eyewitness, testified that respondent was not part of the melee, nor was he connected with the perpetrators of the actual assault, but in fact, was standing with the younger brother of the witness some 20 feet from the occurrence. The witness saw respondent throw a can; however the can did not land anywhere near deceased. Further, that the wife of the deceased was not present when her husband was stabbed.

It was further adduced that respondent was first taken into custody after an identification by deceased's wife in the hall of Adolescent Court [Criminal Court of the City of New York] where respondent appeared only as a witness after the case had been adjourned. Respondent was immediately placed under arrest and was brought to Family Court, Juvenile Term, where a petition was drawn and a Law Guardian assigned as counsel.

Thereafter, on September 21, 1966, two days prior to this hearing, respondent was subpœnaed, and did in fact testify on behalf of the People in Adolescent Court without being advised of his right to remain silent and of his right to have his attorney present, nor was his attorney given notice to appear or that his client was called by the court, District Attorney or petitioner, police officer herein.

Thus, the questions before this court are: (1) Was respondent's constitutional right violated as prescribed by the Family Court Act; (2) did petitioner prove his case by the quantum of proof required by law?

Today, these questions assume even greater significance because of the broadening of constitutional rights of persons accused of crime, by virtue of recent United States Supreme Court rulings (*Escobedo* v. *Illinois,* 378 U. S. 478; *Miranda* v. *Arizona,* 384 U. S. 436), and the legislative thinking and enactments concerning juvenile justice.

Historically, the concept was that the jurisdiction of a juvenile court was not concerned primarily with the nature of the act committed but rather with understanding, guidance and protection of juveniles, instead of '' criminal responsibility, guilt and ' punishment ' ''. In substance, the delinquent, neglected or dependent child were all treated the same (*People* v. *Lewis,* 260 N. Y. 171; Juvenile Ct. Act of Cook County, Ill. of 1899).

However, not all segments of the judiciary and legal family embraced these concepts, but on the contrary, some expressed concern over what in some courts amounted to a '' swapping '' of due process for *parens patriæ.* (*State ex rel. Shaw* v. *Breon,* 244 Iowa 49; *Matter of Poff,* 135 F. Supp. 224; *Shioutakon* v. *District of Columbia,* 236 F. 2d 666; *Matter of Holmes,* 379 Pa. 599; dissenting opn. *People* v. *Lewis, supra.*) There, the dissent queried (p. 179) whether the Constitution was protective only of adults so that '' a child be incarcerated and deprived of his liberty in a public institution by calling that which is a crime by some other name '', and further distinguished between continuing conduct which is noncriminal yet destructive to the child and to society, and the specific act and charge of crime called acts of charity.

The legislative intent in enacting substantial changes in the Family Court Act in September of 1962 becomes more understandable in light of this background. Thus, section 711 of article 7 of the Family Court Act provides *inter alia* '' The purpose of this article is to provide a due process of law ''. This was a new section and the committee draftsman made the follow-

ing comment: " This section expresses a legislative determination to provide a due process of law and recognizes the role of the courts in reviewing under the constitution the ' dueness ' of the process thus provided."

Section 712 of the same act significantly narrows the definition of " juvenile delinquent " to accord with the common understanding that it refers to someone who commits a crime and requires official treatment. This section also creates a new category for children who have not committed a crime or violated a law; it describes these children as being " person[s] in need of supervision " such as a " habitual truant " or a child who is incorrigible, ungovernable or habitually disobedient and beyond the lawful control of its parents or other lawful authority.

Section 741 provides that a juvenile respondent shall be advised of his right to remain silent and of his right to be represented by counsel. The committee's comment on this section is likewise enlightening. " The ' right to remain silent ' is the legislative equivalent of a privilege against self-incrimination ". The right to counsel provision recognizes the importance of legal advice and it expresses " the practical realization of due process of law."

In section 758, the act gives the court the power to impose a sentence of commitment to Elmira Reception Center for a period not to exceed three years, if " upon an adjudication of delinquency of a person who is fifteen years of age at the time of the commission of any act which, if committed by an adult, would be assault in the first degree * * * burglary in the first degree * * * manslaughter in the first degree * * * rape in the first degree * * * robbery in the first degree * *. * sodomy in the first degree * * * or of any crime which would be punishable by death or life imprisonment ".

A reading of the entire act reveals that the Legislature maintained the prevailing concept that the basic concern of the Family Court continues to be the protection and rehabilitation of those children coming under its jurisdiction; the development of the work of juvenile and children's courts, as during the past century, in the patterns of the increasing sociological pressure to separate children's matters from adult. However, the act now expresses its concern to provide the constitutional guarantee of due process in those areas where an act committed by a child would, if committed by an adult, constitute a serious crime.

The Legislature has thus established a dichotomy between delinquent acts which constitute a serious crime and those acts which require a beneficent and sociological approach. I am of

the opinion that the act as presently constituted, read in conjunction with the recent United States Supreme Court decisions, specifically overrules the majority decision in *People* v. *Lewis* (*supra*), a leading case under the former Children's Court procedures. (Cf. *People* v. *James,* 9 N Y 2d 82; see, also, *People* v. *Fitzgerald,* 244 N. Y. 307; *Matter of Williams,* 49 Misc 2d 154.)

Accordingly, I hereby find that the constitutional guarantee to remain silent was applicable to the respondent herein, generally under the new basic philosophical approach of our act and specifically by section 741 of the act; I further find that this time-treasured right was abridged in this case. When the juvenile was compelled to testify in Adolescent Court without being advised of his right to remain silent and right to have his attorney present, and when his attorney was not notified that he was compelled to testify, this in my opinion was a flagrant disregard of respondent's constitutional rights and would of itself warrant dismissal of the petition.

However, the court finds that petitioner has failed to meet the quantum of proof required by law.

Accordingly, the respondent's motion to dismiss on that ground is granted.