Richards W. Hannah, J.
These petitions present the question of whether the Code of Criminal Procedure is presently applicable to this court. It seems desirable to review the law and statutes, since the Court Eeorganization Acts of 1962 have changed the practice in many courts including the Family Court.
Petitions have been brought against the respondents by a police officer alleging that they have violated section 1293-a of the Penal Law in that they were in the unlawful possession of an automobile without the consent of the owner, which was involved in a collision with a parked automobile. The essential elements of the statute have been proven.
The applicability of the Code of Criminal Procedure was raised by respondents when “ Harry Mitchell” was called to testify as a witness for the petitioner.
The respondents urge that ‘1 Mitchell ” is a conspirator and that his testimony is not binding upon them. There was no conspiracy alleged in the petition, only the unauthorized use of a motor vehicle (Penal Law, § 1293-a). Section 580 of the Penal Law defines one type of conspiracy if two or more persons conspire to commit a crime. Since a conspiracy was not alleged, any reference to it is irrelevant. In my opinion, the point wished to be raised was the application of section 399 of the Code of Criminal Procedure,
“ Mitchell ”, a boy over 16 years old, was a passenger in the stolen car. He had been arrested and his case was pending in the Criminal Court. • Counsel for both respondents objected to his testimony upon the ground of incompetency, that he was a co-conspirator and under section 399 of the Code of Criminal Procedure he could not testify. The court overruled the objection and allowed his testimony. ‘ ‘ Mitchell ’ ’ testified that he met “Jones” and “Smith” at a high school, then they all went around the corner to the stolen automobile, that all entered the car together, that is was unlocked, that “ Jones ” drove it for five to ten minutes, that the police chased them, that the car hit a parked car in an attempt to escape and that all jumped out and ran but he was caught. “ Jones ” and “ Smith ” prior to “ Mitchell’s ” entering the car offered to take him to Jamaica *392 for a job interview. He testified that he had known “ Jones ” for six months and they had visited in each other’s homes on occasion. Prior to “Mitchell’s” entering the automobile there had been no talk of ownership.
Detective Ewald who questioned the respondents testified that “ Jones ” denied he was in the car and claimed he was in school. ‘ ‘ Smith ’ ’ admitted being in the car and stated while he was walking along the street ho saw “ Jones ” driving an automobile and “ Jones ” had asked him if he wanted a lift, so he got in.
Officer Butterworth testified that he was in a patrol car, which had pursued this car and that after its collision with a parked car, he arrested “ Mitchell ” at the scene but two other boys escaped.
There was testimony that the automobile was not being operated with the consent of the owner.
Motions to dismiss at the close of petitioner’s case were denied.
“ Jones ” denied being in the automobile and claimed he was in school. Two boys testified on his behalf: one that he came home on the subway with him and left him at 2:45 p.m., and another that he left him on the subway at 3:25 p.m. “ Jones ” admitted he arrived home at 4:20 p.m. The incident is alleged to have occurred at 3:30 p.m. “Smith” testified that while he was walking along the street when “ Jones ” drove by and offered him a ride, that ho got in, that “ Mitchell ” was driving the automobile, that they drove around and were chased by the police and he escaped after the collision. He was never told who owned the automobile and did not know.
An issue of fact was presented and, after hearing all the testimony and having the benefit of seeing and appraising the witnesses, I have concluded that the incident occurred as ‘ ‘ Mitchell ’ ’ testified.
The question presented is whether section 399 of the Code of Criminal Procedure must be applied to this testimony. It provides that “ a conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime ”.
Prior to the enactment of the new Family Court Act, effective on September 1, 1962, the Code of Criminal Procedure was not applied in the Children’s Court (People v. Lewis, 260 N. Y. 171, cert. den. 289 U. S. 709, and People v. Pikunas, 260 N. Y. 72). The reasoning behind these decisions is that juvenile delinquency is not a crime, that a hearing in the Children’s Court is not a criminal trial and that the strict rules of criminal *393 procedure for the parties accused of crime are inapplicable, that the proceedings are entirely different in name and in form, that in the Children’s Court the purpose is to assist, reclaim and rehabilitate the child whereas in the criminal court the result is punishment. There must be a reasonably definite charge, the customary rules of evidence shown by long practice as essential to getting at the truth with reasonable certainty in civil trials must be adhered to, and the finding must be based upon the preponderance of the evidence. Hearsay, opinion, gossip, bias, prejudice, trends of hostile neighborhood feelings, the hopes and fears of social workers, are all sources of error and have no more place in the Children’s Court than in any other court.
In fact under the Children’s Court Act (§ 45, subd. 5) it was provided that ‘ ‘ All provisions of the penal law or code of criminal procedure or other statutes inconsistent with or repugnant to any of the provisions of this act shall be considered inapplicable to the cases arising under this act ”. Section 76 of the Domestic Relations Court Act of the City of New York was to the same effect.
The Family Court Act became effective on September 1, 1962 and the Children’s Court Act (applicable outside the City of New York) and the Domestic Relations Court Act (applicable only within the City of New York) were repealed. (L. 1962, clis. 686, 688, 689.) At the same time the Code of Criminal Procedure was amended (L. 1962, chs. 692, 698). The Family Court was given exclusive jurisdiction over juvenile delinquency (§ 115) and the rules of evidence applicable to hearing became less liberal.
The Report of Joint Legislative Committee on Court Reorganization (1962, vol. 2, p. 2) states under the title of “ Question of Criminal Jurisdiction ” that “ The new constitutional amendment authorizes the Legislature to give to the Family Court extensive criminal jurisdiction. It does this by allowing the Legislature to confer on the Family Court jurisdiction over ‘ crimes and offenses by or against minors * * V Whether, or to what extent, criminal jurisdiction should be given to the new court is a problem of great concern to the Committee. The Committee concluded that it would be unwise, at this time, to give the Family Court the extensive powers given the criminal courts under the Penal Law of the State of New York. This would also introduce the technical requirements of the Code of Criminal Procedure. In the Committee’s view, while a due process of law should be used in the Family Court, criminal powers and procedures would be inconsistent with the proper development *394 of the Family Court, during its formative period, as a special agency for the care and protection of the young and the preservation of the family. Accordingly, the proposed Family Court Act does not at this time include provisions for the conduct of any criminal trial in the new court. ’ ’
The report continues: “ Early in the history of the juvenile court movement, there was agreement that juvenile delinquency proceedings should be ‘civil’, not ‘criminal’,” (Report of Joint Legis, Comm, on Court Reorganization, 1962, voh 2, p. 6.)
Sections 164, 165 and 1018 of the Family Court Act provide that the appropriate provisions of the CPLR apply in the matter of judicial notice of matters of law, methods of procedure not prescribed in this act and to appeals. These sections again emphasize the civil approach of this court. Therefore, although the practice is now more formal and the rules of evidence more strict (see Family Ct. Act, §§ 744, 745), the court is not applying the practice and procedure of the criminal courts. A finding is still based upon a preponderance of the evidence as in civil cases and not reasonable doubt as in criminal cases. To remove any doubt section 11 of the Code of Criminal Procedure was amended effective September 1, 1962 to set forth the particular courts where it was applicable and the Family Court was not included (L. 1962, chs. 692, 698), It applies only in the Supreme Court, County Courts, local courts of inferior jurisdiction established for cities which are expressly authorized by law to act in criminal matters in cities other than the City of New York, the Courts of Special Sessions, the Police Courts and the Criminal Court of the City of New York.
The lawmakers are supposed to have knowledge of the existence and scope of old laws when enacting new laws (Matter of Erikson v. Helfand, 1 A D 2d 59, affd. 1 N Y 2d 775). In construing a statute, the court must assume that the Legislature was cognizant of the existing statutes and their construction and a full knowledge of all decisions (Buduson v. Curtis, 285 App. Div. 517, affd. 309 N. Y. 879; Matter of Smith, 11 Misc 2d 657), The conclusion is clear that it was with full knowledge of the decision of People v. Lewis (supra), the statutes cited above, and the Report of the Joint Legislative Committee that the Family Court Act was enacted and the Code of Criminal Procedure amended. These amendments indicate an awareness on the part of the lawmakers that the previous practice in conducting hearings was too liberal and the rules of evidence were tightened up accordingly. They also indicate a knowledge that the Code of Criminal Procedure was not being applied in this court and by amending section 11 and not adding the Family *395 Court that they wished this omission to continue. Accordingly, I hold that the Code of Criminal Procedure does not apply in this court and the common-law rule as to an accomplice must be applied.
At common law the rule in New York was that a jury could convict a defendant upon the uncorroborated testimony of an accomplice but it was the uniform custom of Judges to advise a jury that the evidence of an accomplice should be received with great caution, and it rarely happened that a conviction was had upon his unsupported testimony. (People v. Hooghkerk, 96 N. Y. 149, 162; People v. Dixon, 231 N. Y. 111, 116; People v. Gibson, 301 N. Y. 244; 7 Wigmore, Evidence [3d ed.], § 2061.) Applying this rule to the tostimoy of "Mitchell ’ ’ I have received it with caution, examined it and accepted it.
There is additional evidence of the flight of “Jones” and “ Smith” from the automobile which is indicative of a consciousness of guilt and even of guilt itself (2 Wigmore, Evidence [3d ed.], § 276). Moreover, the direct evidence of the respondents’ possession of the stolen automobile and his unexplained presence therein justified the inference that the respondents stole the automobile or knew it was stolen. Applying these rules to the evidence, it corroborates “ Mitchell’s ” testimony further.
In reaching this decision, I am mindful that there are other sections of the Code of Criminal Procedure which will be made inapplicable in this court. I refer to the recent “ Stop-and-Frisk Law ”, section 180-a, and the “ Knock-Knock Law ”, section 799 of the Code of Criminal Procedure (L. 1964, chs. 85, 86). However, this court assumes that if the Legislature desired these new statutes to apply to this court that it would have so provided.
Accordingly, I find that the respondents “William Smith” and “ John Jones ” are under 16 years of age and that the acts alleged in the petition have been proven by a preponderance of the evidence.
The Probation Department is ordered to make an investigation of both respondents. Respondents are paroled to August 12, 1964.