Hugh E. Elwyn, J.
The petition of an officer of the New York State Police charges the respondent, a boy 15 years of age, with being a juvenile delinquent in that on or about the 15th day of August, 1965 at about 9:15 p.m. he, in the company of another boy, age 16, broke and entered a cottage owned by Tamarack Lodge which was at the time occupied by a guest, stole jewelry valued at about $2,000 and that these acts of the respondent if done by an adult would constitute the crime of burglary in the third degree. The petition also contained three counts of other acts of the respondent in conjunction with the same 16-year-old boy which if done by an adult would constitute the crime of burglary in the third degree, but since the evidence adduced at the trial related only to the first count the remaining three counts have, on consent of the petitioner, been dismissed.
The evidence produced by the petitioner to establish the respondent’s complicity in the burglary may be summarized as follows: On the night of August 16, 1965 at about 11:15 to 11:30 p.m. an employee of the New York State Department of Correction of the Eastern Correctional Institution at Napanoch, New York, but who at the time was employed as a security guard at the Tamarack Lodge, observed two boys lurking between two bungalows on lodge premises. The guard started to approach the boys, but as he did so the boys disappeared behind another bungalow. As the boys ran past him, he started in pursuit and after a short chase apprehended them beyond a basketball court in the woods. He thereupon took the boys into custody and brought them to the lodge office where one of the boys identified himself as the respondent, Peter Williams. The boys were held at the lodge office for some little time without any charges being placed against them and then some time around midnight or shortly thereafter were turned over to the State Police.
So far as appears from the security guard’s account of the incident neither of the boys had committed or attempted to commit any crime in his presence (Family Ct. Act, § 722; Code Crim. Pro., § 183, subd. 1), nor did he at any time inform them of the cause of their arrest (Family Ct. Act, § 723, subd, [a]; Code Crim. Pro., § 184). He did, however, comply substantially with the provisions of the Family Court Act and the Code of *156 Criminal Procedure regarding the arrest by a private person without a warrant when “without unnecessary delay” he “ deliver (ed) him to a peace officer ” (Family Ct. Act, § 723; Code Crim. Pro., § 185).
Upon being turned over to the custody of a uniformed trooper of the New York State Police the respondent and his companion were taken by police car to the Ellenville, New York substation of the New York State Police[1] for questioning. Up to this point there is no substantial variance in the several witnesses’ account of what occurred. However, with the arrival of the respondent at the police station the stories of the respondent and the police differ sharply in two important details.
First, the respondent says that immediately upon arriving at the police station he asked to see a lawyer, but was told by the uniformed trooper, “not now”. The investigator for the Bureau of Criminal Investigation who interrogated the respondent about the burglaries at the Tamarack Lodge, of which the police had received complaints, denies that any such request to see a lawyer was made. While it appears, that at least so far as an adult is concerned, the failure of law enforcement officers to warn “ a person * * * taken into custody for questioning prior to his arraignment or indictment * * * of his privilege to remain silent and of his right to a lawyer even where it appears that such person has become the target of investigation and stands in the shoes of an accused” would not “render inadmissible inculpatory statements” thereby obtained (People v. Gunner, 15 N Y 2d 226, 233; People v. Jackson, 46 Misc 2d 742, 753), nevertheless, if the respondent did in fact make a request for counsel and his request was refused there is no doubt that any confession which the police thereafter obtained from him would be inadmissible (Escobedo v. Illinois, 378 U. S. 478; People v. Donovan, 13 N Y 2d 148; People v. Failla, 14 N Y 2d 178; People v. Sanchez, 15 N Y 2d 387; People v. Gunner, 15 N Y 2d 226; People v. Friedlander, 16 N Y 2d 248). While all of these cases applied to confessions taken from adults after denial of access by counsel, there is no reason why the exclusionary rule they enforce should not be equally applicable to a juvenile, who, by reason of his immaturity, stands in much *157 greater need of protection from unwarranted police interrogation than an adult.
Secondly, the investigator for the Bureau of Criminal Investigation who questioned the respondent at the police station testified that at first he found the boy to be unco-operative, but that later he became more co-operative and that after about a half hour of questioning he orally admitted his part in the burglary. The B. C. I. investigator explained the boy’s change in attitude by saying that when he first saw the boy at about 12:45 a.m. he appeared to be drunk, but that upon being told that people could be produced who could identify him, he sobered up and, realizing the position he was in, offered to take the police to his bungalow where he had hidden a portion of the stolen jewelry. The respondent, on the other hand, denies that he had been drinking or that he was drunk and vigorously asserts that the confession that he gave was coerced. In fact, he claims he was struck about the left side of the face by the B. C. I. investigator sharply enough to cause his lip to bleed and he says that he thereafter confessed “ because I was scared and I thought I was gonna get beaten up ”. The B. C. I. investigator emphatically denies having struck the boy at any time.
In any event, as the result of the questioning which commenced at about 12:45 a.m. and continued until about 1:15 a.m., the respondent admitted to the B. C. I. investigator that he and his companion had entered a bungalow at the Tamarack Lodge and that they had stolen jewelry and money; that after they had taken the jewelry they went to the woods and split it and that he had taken his part to the bungalow where he was staying. Having confessed to his participation in the burglary the respondent then offered to take the police to his bungalow where he had hidden the jewelry.
Accordingly, at about 2:00 a.m. the same morning the boy did accompany a uniformed State trooper to his bungalow where he produced from a dresser the stolen jewelry wrapped in a handkerchief. Upon recovering the stolen jewelry the trooper returned the boy to the police station, where after further questioning the boy’s confession was reduced to writing and signed by him at about 4:30 a.m. At about 5:00 a.m. the boy was returned to his bungalow and released to the custody of his 18-year-old sister.
The respondent contends that the boy’s written confession taken from him at the police station at 4:30 a.m. after an unlawful arrest and detention is inadmissible and that the jewelry discovered in the respondent’s bungalow is likewise inadmissible *158 and should be suppressed inasmuch as it is the product of an unlawful search.
In support of his contention that the confession is inadmissible the respondent argues (1) that the petitioner has not complied with section 813-f of the Code of Criminal Procedure which requires that “where the people intend to offer a confession or admission in evidence upon a trial of a defendant, the people must, within a reasonable time before the commencement of the trial, give written notice of such intention to the defendant, or to his counsel, if he is represented by counsel ”; (2) that any statement made by the respondent during his detention by the police is within the proscription of section 735 of the Family Court Act which makes inadmissible at a fact-finding hearing any statement made during a preliminary conference; (3) that the arrest made by the security guard was unlawful and that any statement given to the police after an unlawful arrest is inadmissible; (4) that the confession was taken after the boy had asked for and been refused access to counsel; (5) that the confession was coerced and involuntary, and (6) that there was a total failure of the police to comply with the provisions of section 724 of the Family Court Acf which requires that upon taking a juvenile into custody “ the peace officer shall immediately notify the parent or other person legally responsible for his care, or the person with whom he is domiciled, that he has been taken into custody ”.
The search of the respondent’s bungalow for the missing jewelry, even though conducted at the respondent’s invitation, is also claimed to have been unlawful, for concededly the police had no warrant and it is contended that the respondent, who was being illegally detained, could not by reason of his youth consent thereto. These several contentions will be dealt with in the order which they have been stated.
I. ADMISSIBILITY OP THE CONPESSIOH
(1) The first point raised by the respondent; i.e., failure of the petitioner to give written notice to the respondent of an intention to offer the respondent’s confession or admission in evidence upon trial (Code Crim. Pro., § 813-f) is without merit for the reason that, except insofar as certain provisions of the Code of Criminal Procedure relative to arrest are made applicable by sections 721 and 722 of the Family Court Act, the provisions of the Code of Criminal Procedure do not apply to proceeding's in the Family Court (Code Crim. Pro., § 11; Report of Joint Legislative Committee on Court Reorganization, 1962, p. 5; McKinney’s Sessions Laws, 1962, p. 3433; Matter of “ John *159 Doe”, 44 Misc 2d 678, 682; Matter of “ Jones”, 43 Misc 2d 390, 395). The failure of the petitioner to give the respondent advance notice of an intention to offer the respondent’s confession in evidence does not therefore render the confession inadmissible in a fact-finding hearing in the Family Court.
(2) The second reason advanced for the exclusion of the respondent’s statements to the police is equally untenable. In referring to the proscription of section 735 of the Family Court Act which makes inadmissible at a fact-finding hearing any statement made during a preliminary conference, the Appellate Division in Matter of Addison (20 A D 2d 90, 92) has said: “ The preliminary procedure referred to is that carried on under the probation service connected with the Family Court (§ 734) and does not refer to questioning by the police ”.
(3) Although it is probably true, as the respondent contends, that his arrest by the security guard, who had only the status of a private person, was unlawful since no “ crime ” was committed Or attempted by the respondent in his presence, nor, in the light of the decision here made, had “ the person arrested * * * committed a felony, although not in his presence ” (Code Crim. Pro., § 183), the reasonableness of the arresting officer’s belief as to the guilt of the defendant being of no significance (MeLoughlin v. New York Edison Co., 252 N. Y. 202, 205; Doherty v. Lester, 4 Misc 2d 741; Jones v. Freeman’s Dairy, 283 App. Div. 667, 283 App. Div. 806; People v. Cassone, 20 AD 2d 118, affd. 14 N Y 2d 798, 14 N Y 2d 942; cert. den. 379 U. S. 892; Op. Atty. Gen. 37 N. Y. St. Dep. Rep. 33; Op. Atty. Gen. 54 N. Y. St. Dep. Rep. 25), it does not automatically follow that the respondent’s inculpatory statements to the police were thereby rendered inadmissible. At least so far as adults are concerned, an illegal arrest per se does not invalidate an otherwise voluntary incriminating statement (Balbo v. People, 80 N. Y. 484; People v. Barbato, 254 N. Y. 170; Wong Sun v. United States, 288 F. 2d 366; Dailey v. United States, 261 F. 2d 870; Smith v. United States, 254 F. 2d 751; United States v. Walker, 197 F. 2d 287). Consequently, the respondent’s unlawful arrest by the security guard, standing alone, does not render his statement inadmissible if it was otherwise voluntary.
The problem of the admissibility of incriminating statements following an unlawful arrest should not be confused with the admission of such statements following an unlawful detention under the exclusionary rule enforced in the Federal courts (McNabb v. United States, 318 U. S. 332; Mallory v. United States, 354 U. S. 449). The McNabb-Mallory rule is not, however, constitutionally required to be applied in State courts *160 (Gallegos v. Nebraska, 342 U. S. 55, 63, 64; Brown v. Allen, 344 U. S. 443, 476; Stein v. New York, 346 U. S. 156, 187, 188; Cicenia v. Lagay, 357 U. S. 504) and, at least so far as adults are concerned, illegal detention without more is insufficient to compel a finding that an inculpatory statement is involuntary (Balbo v. People, 80 N. Y. 484, supra; People v. Trybus, 219 N. Y. 18; People v. Doran, 246 N. Y. 409; People v. Mummiani, 258 N. Y. 394; People v. Alex, 265 N. Y. 192; People v. Elmore, 277 N. Y. 397; see dissenting opinion of Chief Judge Desmond in People v. Lane, 10 N Y 2d 347, 357; People v. Corbonaro, 48 Misc 2d 115, 117-119).
The proof does not show, and it is not contended, that there was any illegal detention of this child beyond that permitted by section 729 of the Family Court Act, which provides that no child may be detained for more than 72 hours without a hearing. The confession may not, therefore, be excluded upon the ground of unlawful arrest or illegal detention.
(4) The contention that the boy’s confession is inadmissible because extracted from him after he had asked for and been denied access to a lawyer would dispose of the issue in the boy’s favor (Escobedo v. Illinois, 378 U. S. 478, supra; People v. Donovan, 13 N Y 2d 148, supra; People v. Failla, 14 N Y 2d 178, supra; People v. Gunner, 15 N Y 2d 226, supra; People v. Friedlander, 16 N Y 2d 248, supra) if the request was in fact made and denied. However, for the reasons appearing in the discussion of point six it is unnecessary to determine whether this 15-year-old lad was sufficiently sophisticated to have asked to see a lawyer when he did not ask to call his parents.
(5) There is also a sharp issue of fact presented by the testimony as to whether the confession was wrung from the boy as a result of threats that he “had better confess” and of being struck about the face as he contends, but which the police deny, or whether the confession was obtained without the use of any force, threats of intimidation. Of course, if this factual issue were resolved in favor of the boy’s version of the events at the police station, the confession would have to be held to have been involuntary and hence inadmissible, but because of the other serious irregularities connected with the boy’s detention it is unnecessary to resolve the issue.
(6) The most serious irregularity in connection with the respondent’s apprehension and detention, aside from the claimed use of force and threats, militating against the admissibility of the confession is the conceded failure of the State Police, after the boy had been delivered to them by the security guard, *161 to take any steps whatever to notify the hoy’s parents or any other adult of his having been taken into custody, as they are required to do by section 724 of the Family Court Act. The respondent claims that he was not told of his right to notify his parents; the police on the other hand, claim that before taking any statements from him that he was advised “ that he could contact his parents, or he could have his sister present, or he could have an attorney, he didn’t have to say anything, he didn’t have to give the statement if he didn’t want to ”. The B. C. I. investigator who interrogated the respondent conceded, however, that although the respondent gave him the names and addresses of his parents who were then at home in Brooklyn, New York, that neither he nor anyone under his command made any effort to ascertain whether the parents could be communicated with by telephone, nor was any effort made to contact the boy’s parents in any other way, either that night or the following day. It is true, however, that the respondent’s 18-year-old sister with whom he was residing at the bungalow colony was contacted by the police and advised that her brother had been taken into custody, but this was not done until after his oral confession had been obtained and only when the uniformed trooper arrived at her bungalow at 2 o’clock in the morning to search for the missing jewelry.
Counsel for the petitioner would excuse the police for their failure to notify the boy’s parents, if they have advised him of his right to have his parents present before proceeding to question him. On the other hand, counsel for the respondent contends that upon taking a juvenile into custody the police have a positive duty enjoined upon them by section 724 of the Family Court Act to take affirmative steps to attempt to contact a boy’s parents, or the person with whom he is domiciled, before proceeding to question him and that this duty is not performed merely by informing him of his right to call his parents. The language of the statute and authority are on the side of the respondent.
From the mandatory language of section 724 of the Family Court Act entitled, “ Duties of a peace officer after taking into custody or on delivery by a private person” (italics added) and which provides in part that “ If a peace officer takes into custody ” a juvenile, “ the peace officer shall immediately notify the parent or other person legally responsible for his care, or the person with whom he is domiciled, that he has been taken into custody” (emphasis supplied), it is clear that the police cannot shift the burden of decision to the juvenile merely by *162 advising him of his right to call his parents; they must, as the statute.says, make “ every reasonable effort to give notice ” to the child’s parents (Family Ct. Act, § 724, subd. [b]).
Long before the enactment of the Family Court Act, the Supreme Court of the United States when a similar argument to that made by petitioner’s counsel was urged upon it in a case in which the confession of a 15-year-old Negro boy convicted of murder was held to be inadmissible, said in Haley v. Ohio (332 U. S. 596, 601 [1948]): “But we are told that this boy was advised of his constitutional rights before he signed the confession and that, knowing them, he nevertheless confessed. That assumes, however, that a boy of fifteen, without aid of counsel, would have a full appreciation of that advice and that on the facts of this record he had a freedom of choice. We cannot indulge those assumptions
Some years later (1961) in Gallegos v. Colorado (370 U. S. 49, 54) a case involving the admissibility of a confession of a 14-year-old boy charged with having assaulted and robbed an elderly man of $13, the Supreme Court said in response to the prosecution’s argument that the boy had been fully advised of his rights: “ The prosecution says that the boy was advised of his right to counsel, but that he did not ask either for a lawyer or for his parents. But a 14-year-old boy, no matter how sophisticated, is unlikely to have any conception of what will confront him when he is made accessible only to the police. That is to say, we deal with a person who is not equal to the police in knowledge and understanding of the consequences of the questions and answers being recorded and who is unable to know how to protect his own interests or how to get the benefits of his constitutional rights ”.
In this case no attempt whatever was made by the police to notify the boy’s parents that he had been taken into custody. Considering the ease of communication by telephone, the fact that this boy’s parents were not residing in the same community in which he was apprehended is no excuse for their failure to make a reasonable effort to notify his parents. Nor is the notification of an 18-year-old sister, herself a minor, especially after the confession had already been obtained, a sufficient performance of the duties enjoined upon the police by subdivision (a) of section 724 of the Family Court Act. 'Certain it is that even if he is made aware of his rights, the decision to notify or not to notify his parents of his detention in police custody cannot be left in the hands of a child.
Had the police made some reasonable effort to notify this boy’s parents that he had been taken into custody, even though *163 their efforts were unsuccessful, they might then have taken him to the Ellenville police station which is a facility designated by the Appellate Division of the Supreme Court as a suitable place for the questioning of children, and there questioned him for a reasonable period of time (Family Ct. Act, § 724, subd. [b], par. [ii]). That this questioning may proceed even in the absence of the child’s parents, provided the police have first made every reasonable effort to give the notice required by subdivision (a) of section 724 is plainly implied by the statute, for it is provided in subdivision (d) that “ in determining what is a ‘ reasonable period of time ’ for questioning a child, the child’s age and the presence or absence of his parents or other person legally responsible for his care shall be included among the relevant considerations ”. (Emphasis supplied.)
In the case of an adult where there is no statutory requirement that the police must notify an accused’s family that he has been taken into custody before proceeding to question him the Court of Appeals in People v. Hocking (15 N Y 2d 973, 974-975) held that “ The fact that the police refused a request by the defendant’s father to see and speak with the defendant during the period he was being questioned by the police at the station house ’ ’ was ‘ ‘ not in and of itself sufficient reason or basis for excluding the defendant’s confession” but that it might “ be considered, along with all the other circumstances of the interrogation, in passing upon the voluntariness of the defendant’s statements ”. This decision was followed by People v. Taylor (16 N Y 2d 1038) in which the Court of Appeals modified a decision of the Appellate Division (22 A D 2d 524, 526) holding “ that where a defendant has asked to see his family or his family have asked to see him, and such request is denied, any confession thereafter obtained by the police will be inadmissible against him upon his trial ”, by remitting the case to the Appellate Division and ordering that in case the judgment of conviction should be affirmed the court direct a Huntley-type hearing on the voluntary character of the confession. Referring to its decision in Hocking, (supra), the court said (pp. 1039-1040): “ In following that decision we are required to hold that, in the present case, defendant’s confession was not made inadmissible soley because his family was refused access to him but that this fact would be germane on the issue of its voluntary nature ”.
The question presents itself whether these pronouncements of the Court of Appeals concerning the admissibility of confessions taken from adults after denial of access to their family *164 are equally applicable to the confessions of children when taken in violation of section 724 of the Family Court Act. There is a readily discernible reason for the difference in consequences as respects the admissibility of an accused’s confession resulting from denial of access to counsel and denial of access to family and a court’s refusal “ to equate a request to call his family with a request to contact counsel ” (People v. Corbonaro, 48 Misc 2d 115, 123). The right to the aid of counsel is predicated upon a constitutional guarantee (U. S. Const. 6th Amdt.; N. Y. Const., art. I, § 6), whereas there is, of course, no constitutional guarantee of a right to consult one’s family.
In the case of a child, however, there is still another difference, for while there is no constitutional right, there is a statutory right (Family Ct. Act, § 724), not given to adults, which a child has to have his parents notified of his having been taken into custody, presumably so that they may give him whatever assistance their presence and counsel may afford. Moreover, for the reasons expressed in Haley v. Ohio (332 U. S. 596, 601, supra) and Gallegos v. Colorado (370 U. S. 49, 54, supra), previously alluded to, the decision to exercise this right or to waive it does not rest with the child.
However, neither of the two cases in the Appellate Division dealing with the confessions of children taken in violation of section 724 of the Family Court Act .specifically answers the question as to whether, in the case of a child, the failure of the police to make any reasonable effort to notify the child’s parents that he has been taken into custody so taints any statement thereafter taken with involuntariness as to render it, without more, inadmissible, or whether as in the ease of an adult, the denial of access to his parents is “ not in and of itself sufficient reason or basis for excluding the confession ” (People v. Hocking, 15 N Y 2d 973, supra; People v. Taylor, 16 N Y 2d 1038, supra).
In Matter of Dennis (20 A D 2d 86) the failure of the police to notify immediately the boy’s mother that he had been taken into custody was only one of several irregularities in the proceeding which induced the Appellate Division to reverse the order adjudicating the boy to be a juvenile delinquent. In Matter of Addison (20 A D 2d 90) the court clarified the meaning of section 724 of the Family Court Act, but did not exclude the confession for failure to comply therewith, because it appeared that the children had given their statements at the police station after they had been notified to report with a parent for questioning. In Matter of Addison (supra, pp. 91-92) the court said: “ The act does not prohibit the taking of a *165 confession from a child at the police station, where these were so taken, so long as it is not taken in the process of arresting the child and thereafter cutting him off from all communication with parents and others. * * * The question may be asked: Are the police allowed to question a child at the police station at any time? If the answer is in the negative, the confessions obtained by the police are inadmissible as a matter of law, but it does not appear that the Act so provides. * * * There is no interdiction as to confession at the police station although it is clear that a confession may not be obtained prior to notifying parents or relatives and releasing the child either to them or to a Family Court (§ 724).”
Thus it appears that the vice in the police procedures used in obtaining a confession from this 15-year-old boy was not that he was questioned at the police station, an approved facility for the questioning of children, or even that questioning for a ‘ ‘ reasonable period of time ” was carried on in the absence of his parents, but that the confession was obtained in the process of arresting him and during a period of prolonged detention through the early hours of the morning without having made any effort whatever to notify his parents so that they might have an opportunity to be present, thereby effectively cutting him off from all communication with the outside world.
‘ ‘ There is no guide to the decision of cases such as this, except the totality of circumstances that bear on the two factors we mentioned ” —they being the necessity for the observance of the “ procedural requirement of due process ” and the absence of ‘ ‘ the element of compulsion which is condemned by the Fifth Amendment” (Gallegos v. Colorado, 370 U. S. 49, 55, supra). The failure of the police to notify this child’s parents that he had been taken into custody, if not alone sufficient to render his confession inadmissible, is germane on the issue of its voluntary character (People v. Hocking, supra; People v. Taylor, supra) and coupled with all of the other circumstances attendant upon its procurement — the boy’s age, the unlawfulness of his arrest by the security guard, the lateness of the hour, the duration of the detention and the absence of his parents, a lawyer or a friend, compels the conclusion that his confession was involuntary and is inadmissible (Family Ct. Act, § 724, subd. [d]; Haley v. Ohio, supra; Gallegos v. Colorado, supra; cf. People v. De Flumer, 40 Misc 2d 732, affd. 21 A D 2d 959, decided without reference to the Family Ct. Act). “ The Fourteenth Amendment prohibits the police from using the private, secret custody of either man or child as a device for wringing confessions from them ” (Haley v. Ohio, 332 U. S. 596, 601, supra).
*166 II, ADMISSIBILITY OB CONTRABAND
The respondent vigorously contends that, since the police had no search warrant, the search of his bungalow for the missing jewelry was illegal and that the jewelry found in the dresser drawer in the respondent’s bungalow ought to be suppressed. The police, on the other hand, assert that the respondent invited them to accompany him to his bungalow where the jewelry was hidden and that his consent was voluntarily and freely given.
In a criminal case the People have the burden of proving by clear and positive evidence that such consent was given freely and intelligently, without any duress or coercion, actual or implied (Amos v. United States, 255 U. S. 313; Judd v. United States, 190 F. 2d 649; Channel v. United States, 285 F. 2d 217; Nueslein v. District of Columbia, 115 F. 2d 690 ; Rigby v. United States, 247 F. 2d 584; Pekar v. Umted States, 315 F. 2d 319). Submission to authority is not consent (Johnson v. United States, 333 U. S. 10; Catalanotte v. United States, 208 F. 2d 264; Higgins v. United States, 209 F. 2d 819; People v. Loria, 10 N Y 2d 368, 373). The burden on the People to establish consent is particularly heavy where the individual is under arrest or is confined at the police station or in jail -(Judd v. United States, supra; Channel v. United States, supra) and if contraband is in the premises, acquiescence in the search, accompanied by a denial of guilt, does not show consent (Higgins v. United States, supra).
In Judd v. United States (supra, p. 651) the defendant said: “ I have nothing to hide, you can go there and see for yourself ”; in Channel v. United States (supra, p. 219) the defendant said: “ No, my apartment is clean. There is nothing there. You can go out and search the place ”; in Higgins v. Umted States (supra, p. 820) the householder said: “all right”; the officer was “ perfectly welcome to look anywhere in the room ”. In Judd at the time of giving the alleged consent the defendant was in jail; in Channel the defendant was in the custody of agents of the Federal Bureau of Narcotics; and in Higgins the defendant had been arrested in the street and taken to his room. In all three cases the United States Court of Appeals found that the defendant had not truly and intelligently given his consent to the search and that the evidence obtained as a result of the search should have been suppressed. In the case of adults, because consent to search does involve a waiver of basic constitutional rights, “ courts indulge every reasonable presumption against waiver ’ of fundamental constitutional rights ” (Johnson v. Zerbst, 304 U. S. 458, 464). Should they do any less where a child is concerned?
*167 To ask this question opens the Pandora’s Box of whether a child has any constitutional rights at all that need be respected in juvenile courts and to what extent the Legislature may cut off or water down those rights by the simple device of calling his offense juvenile delinquency and not a crime (see dissenting opinion of Judge Crane in People v. Lewis, 260 N. Y. 171, 181). The fact of the matter is that the provisions of the Constitution which specifically apply to criminal cases such as the right to bail, to indictment by Grand Jury, to speedy and public trial, to trial by jury, to freedom from self incrimination, to confrontation and right to counsel are held to be not applicable by reason of such provisions to juvenile court proceedings (Pee v. United States, 274 F. 2d 556, and cases cited in Appendix B, n. 14).
All of these deprivations of basic constitutional rights are justified upon the grounds that the proceedings are not criminal but protective (Pee v. United States, supra, p. 559, and cases cited in Appendix A, n. 12), the underlying philosophy being that the State assumes a position of parens patries and cares for the child who, while in the jurisdiction of the juvenile court, is exempt from the criminal law and insulated from it (Shioutakon v. District of Columbia, 236 F. 2d 666; United States v. Dickerson, 271 F. 2d 487; Harling v. United States, 295 F. 2d 161; Pee v. United States, supra). Illustrative of the philosophy is the following language of the Court of Appeals in People v. Lewis (260 N. Y. 171, 177): “ For the purposes of this case, the fundamental point is that the proceeding was not a criminal one. The State was not seeking to punish a malefactor. It was seeking to salvage a boy who was in danger of becoming one. In words which have been often quoted, ‘ the problem for determination by the judge is not, Has this boy or girl committed a specific wrong, but What is he, how has he become what he is, and what had best be done in his interest and in the interest of the state to save him from a downward career ’ ”. Over a strong dissent, the Court of Appeals affirmed a judgment of the Children’s Court finding a 15-year-old boy to be a juvenile delinquent in a proceeding in which the boy had been questioned by the Judge and the only evidence of his guilt was his own confession. The contention that his constitutional rights were violated in that he was compelled to be a witness against himself is brushed aside with the statement that “ Since the proceeding was not a criminal one, there was neither right to nor necessity for the procedural safeguards prescribed by constitution and statute in criminal cases ”. (People v. Lewis, supra, p. 177.)
*168 While proceedings in the Family Court, as in the old Children’s Court, are civil and not criminal (Report of Joint Legislative Committee on Court Reorganization, 1962, p. 6; McKinney’s Session Laws 1962, p. 3433; Code Crim. Pro., § 11; Family Ct. Act, § 781), it is doubtful, in view of the provisions of section 741 of the Family Court Act, if the decision in People v. Lewis (supra) would be adhered to today. The requirement of section 741 that “ At the commencement of any hearing * * * the respondent and his parent or other person legally responsible for his care shall be advised of the respondent’s right to remain silent” is “the legislative equivalent of a privilege against self incrimination ” (committee comments). This provision of the statute as well as the right to be advised of his right to counsel of his own choosing or the assignment of a Law Guardian (Family Ct. Act, § 741) are clear indications that a child charged with being a juvenile delinquent is not to be shorn of all his constitutional rights by the simple expedient of calling his offense juvenile delinquency and not a crime. If any doubt remains as to the Legislature’s intent to extend at least some constitutional guarantees to juvenile delinquency proceedings, it should be dispelled by the provisions of section 711 of the Family Court Act which states: “ The purpose of the article is to provide a due process of law (a) for considering a claim that a person is a juvenile delinquent or a person in need of supervision and (b) for devising an appropriate order of disposition for any person adjudged a juvenile delinquent or in need of supervision”. Under this section of the law, as published in Book 29A of McKinney’s Consolidated Laws of New York, appears the following committee comments: “1 Due Process. People v. Lewis, 260 N. Y. 171 (1932), indicated by a divided court that not all of the constitutional requirements of a i criminal trial ’ necessarily apply to a ' civil proceeding ’ involving juvenile delinquency. The practical result is that the Legislature has wide discretion in prescribing the processes of law in the area. This section expresses the legislative determination to provide a due process of law and recognizes the role of the courts in reviewing under the constitution the ‘ dueness ’ of the process thus provided ”.
The question that is squarely presented by this case is whether the Fourth Amendment’s guarantee against unreasonable searches and seizures need not be extended to juvenile delinquency proceedings because of their noncriminal nature, or whether a due process of law, which the Legislature says it is the intention of the Family Court Act to provide (Family Ct. Act, § 711), requires that the Fourth Amendment and the exclu *169 sionary rule of Mapp v. Ohio (367 U. S. 643) be applied. The basis for the operation of constitutional guarantees in juvenile proceedings is stated by the United States Court of Appeals in Pee v. United States (274 F. 2d 556, 559, supra) as follows: “ The constitutional safeguards vouchsafed a juvenile in such proceedings are determined from the requirements of due process and fair treatment, and not by the direct application of the clauses of the Constitution which in terms apply to criminal cases ”. Thus, the answer to the question posed is not to be found by a direct application of the language of the Fourth Amendment but in that illusive concept known as ‘ ‘ due process of law” and in this court’s conception of the requirements of “fundamental fairness” (Shioutakon v. District of Columbia, supra).
After much reflection I am persuaded that “ the requirements of due process and fair treatment” demand that the constitutional guarantee against unreasonable searches and seizures be extended to children charged with the doing of any act which if done by an adult would be a crime, and that a Family Court ought to be no less zealous than a criminal court in requiring reality of consent, freely and intelligently given without fear or coercion before permitting contraband discovered as the result of a search without a warrant to be used against them in juvenile delinquency proceedings. Indeed, because of the child’s tender years and lack of understanding of his constitutional rights even more rigorous standards than those applied to adults should prevail when it is claimed that a child has knowingly waived a constitutional right. Mapp v. Ohio (supra, p. 655) has made ‘ ‘ all evidence obtained by searches and seizures in violation of the Constitution, * * * inadmissible in a state court ’ ’. The Fourth Amendment is made applicable to the States through the due process clause of the Fourteenth Amendment (Mapp v. Ohio, supra, p. 655; People v. Loria, 10 N Y 2d 368, 370, supra). To put juvenile delinquency proceedings beyond the reach of the Fourth Amendment and Mapp v. Ohio (supra) because the proceedings are denominated “ civil ” and not “ criminal ” is no more due process of law than to compel the child to be a witness against himself or to deny him the right to counsel, both of which privilege and right are now assured to him by section 741 of the Family Court Act.
The reasonableness of the search of the respondent’s bunga low depends entirely upon the reality of his consent. In the light of the holding of such cases as Judd v. United States (supra); Channel v. United States (supra) and Higgins v. United States (supra), the consent of this 15-year-old boy given at *170 2 o ’clock in the morning while in police custody under a charge of third degree burglary and after he had been questioned for several hours without the presence of his parents or any other adult friend cannot be held to be a consent that was given freely and intelligently without any duress or coercion, express or implied. Unless we are prepared to say that because this boy is charged with juvenile delinquency and not a crime he has no right to be secure in his person, papers, house and effects against unreasonable searches and seizure, the jewelry discovered in his bungalow is inadmissible against him and must be suppressed (Mapp v. Ohio, supra). I think that due process of law and fair treatment require that even juveniles be held to be secure against unreasonable search and seizure.
The respondent’s story to account for his possession of the jewelry found in his bungalow — that his companion on the evening he was taken into custody had on the previous night given the jewelry to him to hold and that he thought it was imitation jewelry — taxes credulity. Yet without the confession, which, uncorroborated, would be insufficient on which to make a determination (Family Ct. Act, § 744), or the admission of the contraband, there is insufficient competent evidence to find that this boy committed acts which if done by an adult would be third degree burglary (Family Ct. Act, § 744; People v. Fitzgerald, 244 N. Y. 307, 313, 315, 316).
The petition must therefore be dismissed. (Family Ct. Act, § 751.)

. The Appellate Division of the Supreme Court of the Third Judicial Department has approved the Family Court’s designation of the New York State Police station at Ellenville, New York on Route 209 as an approved facility for the questioning of children for a reasonable period of time pursuant to section 724 (subd. [b], par. [ii]) of the Family Ct. Act. (Order dated Jan. 13, 1964, Approved Jan. 30, 1964.)