Edward J. Greenfield, J.
Petitioner Steven A. Kirsch, 19 years of age, brings this petition for a writ of habeas corpus to effect his release from detention under the State Narcotic Addiction Control Commission program.
His mother, Mrs. Bita Kirsch, on the 20th day of June, 1968, filed a petition alleging upon information and belief that her sons Steven and Lawrence were addicts. An order was thereupon signed, directing Steven A. Kirsch as an alleged narcotic addict to appear at the Edgecomb Behabilitation Center for examination. Without any prior hearing he was taken to that facility where he admitted to the examining physican that he had been taking heroin for about 13 months and that he used 6 bags a day. He stated that his last previous injection had been 3 days before, and the examining physician found that he was then in moderate distress. Upon the basis of Steven’s admissions and the doctor’s observation of needle marks, the doctor certified that he was an addict.
The following day, after he had been held overnight, Steven was brought to court for the first time. There was a brief hearing, Steven’s mother appeared for the purpose of insisting on his certification, and he was not represented by a guardian ad litem, nor was any counsel designated by the court to advise and represent him. The transcript of the hearing indicates that as he stood with his brother Lawrence the Court Clerk informed them that if found to be addicts they could be certified for up to 3 years, and that they could have a hearing and the aid of counsel. Steven indicated, together with his brother, that both wished to go to the hospital voluntarily, and that neither wanted a hearing or the aid of counsel. Their answer to the question as to whether they wished to go to the hospital voluntarily was a monosyllabic “yes ”, and to the questions *572 whether they desired a hearing or the assignment of an attorney, a monosyllabic ‘ ‘ no ”.
Sometime thereafter, in the course of his detention and treatment, petitioner became aware of the decision of the Court of Appeals in the Matter of James (22 N Y 2d 545) which was handed down on July 2, 1968. In that case, the court held that the detention of an alleged addict on a petition, 1 ‘ without notice of the nature of the proceeding and an opportunity to contest the finding upon which the determination to restrain his liberty was predicated, is contrary to our most fundamental notions of fairness and constitutes a deprivation of liberty without due process of law” (p. 552). It concluded that any subsequent determination of addiction based upon information obtained during the period of illegal detention had to be set aside.
In this case, the Attorney-General concedes that under the James ruling, the admissions by petitioner as to his addiction made while being detained at the Edgecomb Rehabilitation Center could not constitutionally have been used in a contested hearing, but argues that here the petitioner waived whatever constitutional rights he may have had to raise any objections by agreeing voluntarily to submit for treatment, and by not asking for a hearing on the issue of addiction or requesting the assistance of counsel.
The first question, then, is whether this petitioner, still an infant in the eyes of the law, could have effectively waived his constitutional rights so as to submit irrevocably to a period of detention pending cure for up to three years. Waiver is an intentional relinquishment or abandonment of a known right or privilege. (Johnson v. Zerbst, 304 U. S. 458, 464; Alsens Amer. Portland Cement Works v. Degnon Contr. Co., 222 N. Y. 34.) As a general proposition, an unrepresented infant is deemed unable to waive or consent to a violation of his rights (Dixon v. United States, 197 F. Supp. 798, 803; 43 C. J. S., Infants, § 26, subd. b), nor can a third person do so for him. (Matter of Curtin v. City of New York, 196 Misc. 587.)
So far as civil cases are concerned, it is elementary that an infant cannot be bound by a contract, nor can he release or waive his rights to such things as damages for personal injury, since it is conclusively presumed that he has not the mental capacity or discretion to do so. Even when an infant has a parent acting for him as guardian and has an attorney representing him, court approval is required before there is any settlement, and the infant is not bound. (28 N. Y. Jur., Infants, § 17 and cases cited therein.)
*573 The CPLR requires that infants must appear by a guardian ad litem in every civil case (CPLR 1203, 1207, 1208) and an infant has no capacity to waive the failure to appoint such a representative to protect his interests. (Ingersoll v. Mangam, 84 N. Y. 622; Pacilio v. Scarpati, 165 Misc. 586.)
If an infant cannot be held to a contract knowingly and understandingly made by him, if he cannot waive his rights with respect to property and damage claims in civil proceedings, if he requires representation in every civil case, it seems anomalous that in a criminal or quasi-criminal case he should be held to a different standard, and could be deemed alone, unadvised and unrepresented to waive constitutional rights of greater scope and complexity, irrevocably committing himself to a loss of liberty for a substantial portion of his young life. (Matter of Mears, 124 Vt. 131, 144, citing Reppin v. People, 95 Col. 192, 210.) “ Indeed, because of the child’s tender years and lack of understanding of his constitutional rights even more rigorous standards than those applied to adults should prevail when it is claimed that a child has knowingly waived a constitutional right.” (Matter of Williams, 49 Misc 2d 154, 169.)
The Supreme Court of the United States in Miranda v. Arizona (384 U. S. 346) has pointed out that an adult defendant may not be presumed to know his rights, which often cannot be effectively exercised without the aid and presence of counsel, and has put the burden on the authorities to delineate those rights and ascertain that a suspect is expressly and affirmatively relinquishing those rights.
Before a waiver of basic rights can be found, something more must be shown than a perfunctory recital of rights, or even a rudimentary understanding by the person accused. Few adults, let alone children, have the necessary sophistication to understand the procedural safeguards which have been erected for their benefit. (Gallegos v. Colorado, 370 U. S. 49.)
In the landmark decision of Matter of Gault (387 U. S. 1, 38) the Supreme Court applied the concepts of procedural due process, including the right of counsel, to juvenile court proceedings. The court, in footnote 65, commented on what should be readily apparent to all: ‘1 The presence of an independent legal representative of the child, or of his parent, is the keystone of the whole structure of guarantees that a minimum system of procedural justice requires. The rights to confront one’s accusers, to cross-examine witnesses, to present evidence and testimony of one’s own, to be unaffected by prejudicial and *574 unreliable evidence, to participate meaningfully in the dispositional decision, to take an appeal, have substantial meaning for the overwhelming majority of persons brought before the juvenile court only if they are provided with competent lawyers who can invoke those rights effectively. The most informal and well-intentioned of judicial proceedings are technical; few adults without legal training can influence or even understand them; certainly children cannot. Papers are drawn and charges expressed in legal language. Events follow one another in a manner that appears arbitrary and confusing to the uninitiated. Decisions, unexplained, appear too official to challenge. But with lawyers come records of proceedings; records make possible appeals which, even if they do not occur, impart by their possibility a healthy atmosphere of accountability.”
While there would then seem to be serious doubt whether a minor could ever effectively waive his constitutional rights without the advice and counsel of an attorney, our Court of Appeals, in People v. Stephen J. B. (23 N Y 2d 611, 616) has recently stated: “We cannot accept the suggestion that every minor is as a matter of law incompetent to waive his constitutional rights to remain silent and to an attorney unless the waiver is consented to by a parent or guardian who has himself been advised of the minor’s rights. Of course, such adult consent is to be desired. However, whether a minor knowmgly and intelligently waived these rights is a question of fact.” (Emphasis supplied.)
So, to the factual question of waiver. At the hearing before me on the writ of habeas corpus, Steven, the petitioner, testified that when he previously appeared in court for the commitment hearing he was fully convinced of the futility of any further resistance. He had admitted to the examining physician that he was an addict and a heavy user of heroin. His mother had initiated the proceeding, and was insisting upon his being committed to the State program. His older brother was acquiescing at the same time. He had not the slightest awareness that his original detention and the admissions he made thereupon were constitutionally defective. The pressures on him must have been tremendous. The world was closing in and there appeared to be no escape.
A contested hearing under those circumstances to determine whether he was an addict, and the right to a lawyer to represent him must have appeared to have been at that point merely time-consuming and foolish formalities. He thereupon answered *575 “no ” when asked if he wanted a hearing or lawyer, and “ yes ” when asked if he wanted to go to the ‘ ‘ hospital ’ ’ voluntarily. He knew nothing then about the Court of Appeals decision in the Matter of James (22 N Y 2d 545, supra) which had resulted in the release of an addict despite his admissions and the findings of the doctor in an examination held prior to a hearing. How could it be said then that under these circumstances petitioner “ knowingly ” and “intentionally” waived his rights, as to the existence of which he had not the slightest awareness. I find he did not.
Every case, of course, stands upon its own unique set of facts and circumstances. Hence the finding of other Judges of this court that other infant addicts did in fact knowingly and voluntarily waive their rights and consent to certification and commitment can have no effect on the decision here. (See, for example, Anonymous v. Chinlund, N. Y. L. J., Oct. 30, 1968, p. 17, col. 3; Matter of Williams, N. Y. L. J., Jan. 16, 1969, p. 16, col. 5; cf People v. Piracci, 24 A D 2d 892 and Matter of Spence, 30 A D 2d 810.) This case more closely resembles Matter of Thompson (57 Misc 2d 932).
To say here that the mere pro forma recital of rights and the monosyllabic waiver of those rights by an infant without either a parent or lawyer to advise him is conclusive and binding would appear to exalt form over substance. The United States Supreme Court warned in Kent v. United States (383 U. S. 541, 554-555) that: “ The State is parens patriae rather than prosecuting attorney and judge. But the admonition to function in a ‘ parental ’ relationship is not an invitation to procedural arbitrariness.”
In Von Moltke v. Gillies (332 U. S. 708, 724) Judges were warned to make more searching inquiry before concluding there was a waiver. 1 ‘ The fact that an accused may tell him [the judge] that he is informed of his right to counsel and desires to waive his right does not automatically end the judge’s responsibility. * * * Mere routine inquiry * * * may leave a judge entirely unaware of the facts essential to an informed decision that an accused has executed a valid waiver of his right to counsel.”
To put an affirmative burden on an infant confronted by a hostile parent and an indifferent court to make an intelligent choice as to the desirability of retaining counsel is to ask virtually for the impossible. The President’s Commission on Law Enforcement (cited in Matter of Gault, supra, p. 38) has recommended that ‘ ‘ counsel should be appointed as a matter *576 of course wherever coercive action is a possibility, without requiring any affirmative choice by child or parent ’ The Challenge of Crime in a Free Society (1967) p. 87. Courts, by following this course of designating counsel for every minor whether requested or not would avoid much of the dilemma as to whether there has been a voluntary waiver.
Particularly in proceedings such as those under the Narcotic Addiction Control Law is this required, since so often the desires of parent and child are in direct conflict. Under these circumstances the minor cannot rely for help or advice upon the parent. And the parent, however well-intentioned, and with the best interests of his or her child at stake might still be confused, uninformed or mistaken. Several cases have already occurred where the well-meaning petition of the parent is motivated more by vivid imagination than by fact. In still other situations, the hearing on the petition for commitment becomes the forum for formalizing a desperate intra-familial conflict. The appointment of counsel whose vision is not obscured by emotional predisposition will aid the minor and the cause of justice.
In Matter of James (54 Misc 2d 514, 524) the learned Mr. Justice Spiegel accurately put his finger upon the inevitability that once the facts appear to have been established in pretrial proceedings, ‘1 the right to a hearing * * * [would be] hollow, meaningless and a mere formality. His certification has been assured by his pretrial medical examination and admissions. It is the prehearing steps which are critical. Any warning thereafter as to his rights is an empty gesture. ’ ’
The perfunctory reply at the commitment hearing that petitioner did not desire counsel after having been informed of his right thereto cannot be conclusive here. “It is necessary to distinguish between the juvenile’s understanding his right to counsel and his recognition of the need for legal advice. The latter, which should be the test applied, is rarely used.” (68 Col. L. Rev. 1149, 1158, n. 71, “ Waiver in the Juvenile Court italics supplied.)
Accordingly, this court finds that the petitioner here, although he indicated voluntary assent to certification to the State Narcotic Addiction Control Program, did not knowingly, intentionally and with understanding waive his rights to a lawyer and to a hearing, and that if he had been afforded counsel at such hearing, the certification could not have issued. The petition for the writ of habeas corpus is therefore sustained, and Steven Kirsch is directed to be released from custody.